389 So.2d 485 (1980)
Dale BOYINGTON, or Dale Boykin
v.
STATE of Mississippi.
No. 52000.
Supreme Court of Mississippi.
September 10, 1980.
Rehearing Denied November 12, 1980.
*487 Lester F. Williamson, Jr., Hamilton & Williamson, Meridian, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, BROOM and LEE, JJ.
LEE, Justice, for the Court:
Dale Boyington, or Dale Boykin, was convicted in the Circuit Court of Newton County on a charge of selling marijuana in a quantity less than one (1) kilogram, and was sentenced to a term of eight (8) years in the state penitentiary. He has appealed and assigned seven (7) errors in the trial below.
The State called two (2) witnesses: Bill Marshall, an agent for the Mississippi Bureau of Narcotics, and Mickey Williams, a toxicologist for the Mississippi State Crime Laboratory. The appellant rested without presenting any evidence.
The evidence for the State, which was undisputed, reflected that on April 26, 1978, Bill Marshall met with two (2) informants in the Chunky community of Newton County for the purpose of making a marijuana buy. He was taken to a residence about 2:00 in the afternoon, where appellant arrived and was introduced to Agent Marshall. Appellant went into the residence and returned with a brown paper bag containing approximately seven (7) ounces of marijuana. Appellant agreed to sell the marijuana to Agent Marshall for twenty dollars ($20.00) per ounce. Marshall requested an additional three (3) ounces, which were procured by appellant from the residence, and Marshall paid him two hundred dollars ($200.00). After obtaining the contraband from appellant, Marshall delivered it to Mickey Williams, toxicologist at the Mississippi State Crime Laboratory. Williams testified for the State and identified the substance as marijuana.

I.
Appellant first contends that there was prosecutorial interference with his right to counsel, which requires the dismissal of the indictment.
An evidentiary hearing was held on the motion to dismiss, and Agent Robert Pierce testified that, after appellant's indictment, he was apprehended in the State of Pennsylvania. Pierce went there for the purpose of returning him to Mississippi for prosecution. Appellant waived extradition and, en route to Mississippi, stated to Pierce he would like to "help himself." Pierce told appellant that, if he would help the Bureau and serve as an informant, he would recommend *488 probation for him. Appellant made bond, and he worked as an undercover informant with the Mississippi Narcotics Bureau for approximately six (6) months, developing ten (10) cases during that time.
The Newton County Circuit Court and the District Attorney's Office knew that appellant was working in such capacity. Appellant was arraigned on March 19, 1979, at which time he requested, and the court appointed, an attorney to represent him. The court, being aware of the defendant's work with the Mississippi Bureau of Narcotics, granted a continuance of the case on March 26, 1979, until the August 1979 Term of court. Prior to that term, Agent Pierce requested the district attorney to recommend that appellant be placed on probation and the district attorney agreed to make the recommendation. However, the circuit judge declined to accept the recommendation and, as next best, the district attorney recommended a sentence of two (2) years in the state penitentiary, which the trial judge agreed to accept. The appellant declined that sentence and requested that his court appointed attorney be discharged. His family then employed other attorneys to represent him.
At the evidentiary hearing, appellant testified that he agreed to work with the Mississippi Bureau of Narcotics only after receiving a promise of leniency and probation from Agent Pierce. Also, that Pierce led him to believe that he could get out of the charge, if he worked for the Bureau of Narcotics, and that Pierce told him there was no need to pay for a lawyer because the court would appoint one for him. Pierce did not rebut that testimony. Appellant contends there was prosecutorial interference with his right to counsel which denied him effective counsel, and he complains that his attorney was ineffective because he failed to obtain probation for him. Appellant cites People v. Mason, 97 Misc.2d 706, 411 N.Y.S.2d 970 (1978); Commonwealth v. Manning, 373 Mass. 438, 367 N.E.2d 635 (Mass. 1977); People v. Moore, 57 Cal. App.3d 437, 129 Cal. Rptr. 279 (1976); and United States v. Morrison, 602 F.2d 529 (3d Cir.1979). However, the above cases deal with the willful interference with a defendant's right to counsel and are not authority for the present question.
We can understand how appellant honestly believed he would receive probation for his cooperation with the State as an undercover informant. It is unfortunate that the actions of the agent and district attorney, upon which appellant relied, did not result in what he understood would occur upon entry of a guilty plea (probation). However, this assignment is not well taken.

II.
Appellant contends that his employment as an undercover agent, after his arrest, violated his Thirteenth Amendment rights and 42 U.S.C. § 1994 (1974), the antipeonage statute.
As stated before, appellant freely and voluntarily entered into the arrangement with the Bureau of Narcotics, the agent did recommend to the district attorney that appellant be placed on probation, the district attorney made the same recommendation to the trial judge, which was not accepted by him. Cases cited by appellant are not authority on this point, and the argument is not persuasive.

III.
Appellant insists that the trial court erred in failing to grant his continuance, after employing another attorney, and in setting his case on Friday for the following Monday, since his attorney could not properly prepare his defense in that time period.
Six (6) days prior to the trial, appellant discharged his court-appointed attorney and employed another attorney. At the hearing on the suppression motion, appellant requested a continuance in order that his new attorney could have additional time to prepare his defense. The following discussion was held between Mr. Hamilton, new counsel for appellant, and the trial judge, concerning the continuance:
"BY MR. HAMILTON:

*489 ... I understand we are set for trial first out Monday morning. Am I correct?
BY THE COURT:
Mr. Hamilton, I am going to give you a little leeway. You have asked for a continuance.
BY MR. HAMILTON:
Your Honor, Monday will be fine with me, if we are going to try it next week."
It is noted that the court offered to give appellant's attorney additional time to prepare his case, but the attorney told the court that Monday would be fine with him to try the case. There is no merit in this assignment. The discussion on Assignments I and III cover and dispose of Assignment VI.

IV.
Appellant argues that the trial court committed reversible error in discussing the disposition of appellant's case with the district attorney in the absence of the defendant and without his knowledge.
The narcotics agent and the district attorney did no more than the appellant had requested that they do in recommending to the trial judge that he place the appellant on probation. This did not constitute one of those crucial areas of a trial where the defendant is entitled to be present at all times. Furthermore, the point was not raised in, or presented to, the trial court for consideration, and was not preserved for error in this Court. Howell v. State, 354 So.2d 1124 (Miss. 1978); Ponder v. State, 335 So.2d 885 (Miss. 1976).

V.
Appellant contends that the action of the trial judge in offering to accept the recommendation of two years in the penitentiary, and, after conviction, sentencing the appellant to eight (8) years violated his constitutional right to a jury trial.
There was no violation of appellant's constitutional right to a jury trial. The trial judge offered to accept a two-year recommendation and he did not indicate that, if appellant demanded a jury trial, and was convicted, he would impose a more severe sentence. There is no basis here for the contention that the court did not consider legitimate factors in pronouncing the sentence and that the heavier sentence resulted because appellant demanded a jury trial. See Fermo v. State, 370 So.2d 930 (Miss. 1979).[1]
However, we note that after appellant had discharged his court appointed attorney and his family had employed other attorneys (Hamilton and Williamson) to represent him on the trial, when the suppression hearing was held, the following discussion occurred between Attorney Hamilton and the trial judge:
"BY THE COURT:
Now, Mr. Hamilton, when was this Defendant arraigned and indicted, August or March?
BY MR. HAMILTON:
March the 19th. He was indicted in August.
BY THE COURT:
Upon being presented to the Court and being questioned, I established he was an indigent person, and I appointed him counsel, Mr. McMillan who represented him at that term of Court, and appeared at this term of Court to represent him. The case is set for call today and trial next week. Mr. McMillan announced to me first thing this morning that you had been employed. Now, I don't like this, on these Court appointments. I am not going to permit this Defendant, or any other Defendant, to come into this Courtroom and ask for a Court appointed attorney and then turn around and hire an attorney. Mr. McMillan has represented this fellow, and he is going to be paid, and the county is not going to pay it. If it should develop this Defendant has lied to me as a reason for appointment, *490 I am going to be hard to get along with.[2]
BY MR. HAMILTON:
Yes, sir, I understand.
* * * * * *
BY THE COURT:
What do I normally allow Court appointed attorneys as fee for appointment if there is disposition before trial?
BY THE COURT REPORTER:
$100.00
BY THE COURT:

That will be the fee he will pay to the county, and that will be the fee I will allow Mr. Rusty McMillan. Now, I want an understanding. Will that be paid?
BY MR. HAMILTON:
Yes, Your Honor. I have not been paid anything yet. I have a promise from his mother. I have every intention of getting with Mr. McMillan and seeing that he is compensated. I have every intention of seeing he is paid for his work.
BY THE COURT:

We will proceed with that understanding. Otherwise, if it is not paid by Monday at 9:00 o'clock, I will hold him and confine him in the jail until it is paid to the county. The county incurred expenses, and they will be reimbursed for the amount. All right." (Emphasis added)
The record further reflects that after the guilty verdict was returned, and, in pronouncing sentence, the court said:
"Dale Boyington, you were found guilty by a jury for the unlawful sale of marijuana. There is a difference, in my view, of the sale of marijuana and the possession of marijuana... . I recognize that you were not of assistance until you were caught and arrested. I have been a practicing attorney for a great number of years, as well as a State prosecuting attorney, and I have been confronted many times with situations where persons who are involved with the law, they will assist in certain matters for their own benefit. You had been indicted. You had been picked up in the State of Pennsylvania, and it was necessary for the officers of this county to go to Pennsylvania and return you to the State of Mississippi, and it was only after you were taken into custody that you decided that you would be of assistance. Are you staring at me?

BY THE DEFENDANT:
No, sir.
BY THE COURT:
The maximum punishment, if I recall correctly, is something like twenty years and a stiff fine. It is the sentence of this Court you serve a term of eight years in the Mississippi State Penitentiary. You are given credit for your jail time. Take charge of him, Sheriff." (Emphasis added)
In Fermo, supra, we also said:[3]
"While a trial judge must control the sentencing phase of a criminal trial and has the responsibility and duty of approving or disapproving a recommendation by the prosecutor, he should never become involved, or participate, in the plea bargaining process. He must remain aloof from such negotiations. The trial judge always must be circumspect and unbiased, at all times displaying neutrality and fairness in the trial, and consideration for the constitutional rights of the accused." 370 So.2d at 933.
Most courts recognize that plea bargaining is an essential part of the criminal justice system. Salter v. State, 387 So.2d 81, Nos. 51,773 and 51,786, handed down July 30, 1980 [Not yet reported]; Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); Santobello v. New York, 404 U.S 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). While, as stated above, the trial judge must control the sentencing phase of *491 a criminal trial, it is common knowledge among courts, prosecutors, attorneys and even laymen, that a prosecutor, who represents the State, is, or should be, fully informed and knowledgeable about the case which he will present to the court, its strength or weakness, and its effect on similar cases, more so than the trial judge himself. With that in view, trial judges, as a rule, follow the recommendations of the prosecutor, unless they are patently contrary to the interest of the State and the people, or are unfair and unjust.
Although no plea was entered here, in Salter, supra, quoting from Santobello, supra, the Court said:
"`[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.
In the present case, the district attorney had functioned as such in the Eighth Circuit Court District for more than three and one half (3 1/2) years. The record does not reflect that either he or Agent Pierce had any doubt but that the recommendation of probation by the district attorney would be approved by the court. The appellant certainly had every reason to believe that he would be given probation and he did all he agreed to do with the agents and officials of the State of Mississippi, which resulted in developing ten cases of narcotics violations in the state.
This Court is required to review money judgments in civil cases to determine their adequacy or excessiveness, and has the power to enter additurs and remittiturs. We are also required to review sentences in capital murder cases to make sure that the death penalty is not wantonly or freakishly imposed and that it is inflicted in a consistent and evenhanded manner. It may become inevitable that justice will require appellate courts to review sentences less than capital.
We do not revoke or disturb the principle that the imposition of sentence is within the sound discretion of the trial court, and that this Court will not reverse the sentence so imposed, if it is within the limits of the statute. Anderson v. State, 381 So.2d 1019 (Miss. 1980); Yazzie v. State, 366 So.2d 240 (Miss. 1979); Ainsworth v. State, 304 So.2d 656 (Miss. 1975); Clanton v. State, 279 So.2d 599 (Miss. 1973).
However, under the peculiar facts of this case, where we do not find error which requires reversal for a new trial, but where the appellant, with the knowledge of the trial court, worked for the Mississippi Bureau of Narcotics as an undercover informant, and was promised by the Bureau and district attorney that they would recommend probation, which led appellant to believe he would be placed on probation, we hold justice requires that the judgment of the lower court sentencing appellant to eight (8) years in the Mississippi State Penitentiary be vacated and that the case be remanded to the lower court, with instructions that appellant be placed on probation under such terms and conditions as the lower court may prescribe.
This case was considered by a conference of the justices en banc.
AFFIRMED AND REMANDED.
PATTERSON, C.J., ROBERTSON and SMITH, P. JJ., and SUGG, BOWLING and COFER, JJ., concur.
BROOM and WALKER, JJ., dissent.
BROOM, Justice, dissenting:
With deference I must dissent to that part of the majority opinion remanding the case with instructions that the appellant be placed on probation. The opinion correctly says, (1) "there is no basis here for the contention that the court did not consider legitimate factors in pronouncing the sentence" and (2) "we do not find" reversible error.
Appellant's argument might have some merit if the record demonstrated any indication that the state or any of its representatives *492 or agents reneged after initiating or setting in motion the events leading up to any "deal" whereby appellant was induced or misled to work for the state. The peculiar scenario depicted in this case developed by means of a chain of events set in motion by the appellant himself. Without his being offered any inducement, while en route from Pennsylvania to Mississippi after waiving extradition, the appellant first broached the subject of a "deal" and stated to Agent Pierce that he would like to "help himself." This is clearly shown by the following excerpt from the record:
Q. Now, as you returned by the airline, did you have some conversation with Mr. Boykin regarding his doing some work for the department?
A. Yes, sir, he mentioned he would like to help us, to help himself on his case. I told him if he did that, what I could do is make a recommendation to the D.A. for a lighter sentence, as far as my part is concerned, or some type of probation, which I did talk to the District Attorney about it later on after I got back and we started working Dale. (Emphasis added).
It was only after this overture by the appellant himself that he was promised anything. The promise made by Pierce to appellant was alternative: that is, Pierce would recommend to the "D.A. for a lighter sentence ... or some type of probation ..." This was corroborated by Deputy Sheriff Dean who testified that he was on the airplane en route to Mississippi and heard Pierce say in return for the appellant's undercover work, Pierce would recommend "to the D.A. for a lighter sentence or whatever." Subsequent to appellant's overture, Agent Pierce requested the district attorney to recommend probation for the appellant. The district attorney agreed to make such a request and completely fulfilled his promise, but unfortunately (for the appellant) the trial judge rejected the recommendation.
The majority opinion correctly holds that there was "no violation of appellant's constitutional right to a jury trial." Acknowledgment is made in the opinion that under our rule this Court will not "revoke or disturb" the action of a trial judge in meting out a sentence if done within statutory limits. Yet we are intruding into the function of the sentencing judge here in a situation where obviously everything promised the appellant was done. Agent Pierce actually did more than he promised in recommending probation (his promise was to recommend a light sentence or probation) to the district attorney who in turn discharged his promise in recommending probation to the sentencing judge.
In justifying the action of the majority, some sort of analogy is drawn between the present situation and that having to do with adequacy or excessiveness of money judgments in civil cases, that is, the matter of additurs and remittiturs. Of course, we review many judgments in these situations but we do so by virtue of statutory authority: Mississippi Code Annotated § 11-1-55 (Supp. 1979). The majority points out that we are also "required to review sentence in capital murder cases... ." Again, we review such sentences under statutory authority. Mississippi Code Annotated § 99-19-105 (Supp. 1979). In my opinion, we should not vacate the sentence in the present case where admittedly there is no statutory authority for us to do so. As found by the majority, the sentencing judge considered legitimate factors and imposed a sentence much less than the maximum of twenty years which he could have had imposed. In reviewing the appellant's sentence, we are usurping the function of a circuit judge who, exclusive of all others, has the duty of imposing a sentence. The sentence (as compared to twenty years maximum) is undeniably light and within the scope of what Agent Pierce told appellant he would recommend as an alternative.
It may be true that the appellant in his own mind thought that in return for doing undercover work he would be given probation. Can a defendant under criminal charge bind the sentencing judge by what the defendant in his mind thought? If we hold that he can, we are setting a dangerous *493 precedent: one which will tend to paralyze and otherwise impair the functions of those servants who preside over trials of criminal cases, and who know much better than we what sentence would be proper.
Here Agent Pierce made no promise to the appellant until the appellant himself (not anyone representing the state) set in motion the chain of events which culminated in the judgment appealed from. Only after the appellant made known to Agent Pierce he wanted to "help himself" did Pierce state he would recommend to the D.A. a light sentence or probation. When the matter came on for final disposition, the circuit judge offered a sentence of two years (one-tenth of the maximum sentence), but appellant chose to proceed with the trial which he had a right to do. Nevertheless, when he made the decision to proceed with the trial, it was he (not the judge or any state agent) who was rejecting a light (two years) sentence. After being found guilty, he was even then sentenced to only eight years imprisonment when he could have been given twenty years.
Upon such a record, and absent any reversible error being shown on the part of the lower court, I am not willing that we should for the first time ever, absent any statutory authority, where no reversible error is found, vacate a trial judge's order and tell him he must place on probation one found guilty by a jury. My feelings are accentuated by the fact that (1) the appellant himself initiated the plea bargaining process, (2) in return he was alternatively promised a "recommendation" for either a light sentence or probation, (3) no one reneged on any promise, (4) the appellant rejected a light two-year sentence when offered, and (5) even after being found guilty by a jury, he received less than half the maximum sentence.
For these reasons, my feeling is that we should leave undisturbed the lower court's judgment and sentence.
WALKER, J., joins this dissent.
NOTES
[1] However, see Frank v. Blackburn, 605 F.2d 910 (5th Cir.1979).
[2] It is undisputed that Agent Robert Pierce, Mississippi Bureau of Narcotics, advised appellant that he should not employ an attorney, that the court would appoint one for him.
[3] Fermo opinion was written by Justice Lee for the Court.