IRVING, J.,
for the Court.
¶ 1. Michael Poole was found guilty by a Pike County jury of the sale of marijuana. Following his conviction and sentence, Poole filed a motion for a new trial or, in the alternative, for a JNOV. He later filed an amended motion for a new trial or in thp alternative for a JNOV. The trial court denied the post-trial motions, and this appeal ensued. In this appeal, Poole argues that he is entitled to be set free or at least granted a new trial because the State reneged on a deal and engaged in improper conduct.
¶ 2. We find no evidence that Poole accepted the deal or that the State engaged in improper conduct; therefore, we affirm the judgment of the trial court in all particulars.
FACTS
¶ 3. The Mississippi Bureau of Narcotics (MBN) enlisted the service of Bobby May, an informant who had criminal charges pending against him, to aide in a buy-bust. In a buy-bust, immediately after the purchase of contraband is made by an informant or, undercover agent, MBN agents move in and arrest the seller. In the present case, May agreed to attempt to purchase approximately two pounds of marijuana from Poole.
*1286 ¶ 4. Before the purchase, May came to the MBN’s McComb office where agents searched his body, and his vehicle. After the search, May was equipped with a body transmitter, as well as a digital recorder, and supplied with buy money. The serial numbers on the money were photocopied for later identification. A wire repeater was placed inside May’s vehicle to amplify the signal of the body transmitter. May then left the MBN’s offices to meet Poole. He was closely followed by MBN agents.
¶ 5. May purchased two pounds of marijuana from Poole for $1600. After the transaction was completed, MBN agents confronted Poole. Poole was placed in handcuffs, and taken to the MBN’s district office in McComb, Mississippi. There, he signed a Miranda waiver, and the MBN agents began to question him about his involvement in the marijuana trade. The MBN expressed interest in learning the identity of Poole’s supplier. After Poole was processed, he was allowed to leave. At that time, it was the understanding of the MBN agents that he would cooperate with their investigation of marijuana trafficking in the area. Poole never completed any drug transactions for the MBN and was subsequently arrested and taken into custody.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. Poole asserts a' single assignment of error within his brief. He alleges that the State, acting through the MBN, unilaterally imposed a duty upon him that he go to work for it as an unpaid, undercover, unprotected agent and confidential informant. He further alleges that the MBN patiently sought-to coerce him into service, holding the threat of legal sanction and imprisonment over his head. Thus, he claims the State subjected him to unconstitutional involuntary servitude or peonage in violation of the Thirteenth Amendment to the United States Constitution and the Anti-peonage Act of 1867. In effect, Poole argues that he had no other choice but to agree to work as a confidential informant for the MBN.
¶ 7. The Mississippi Supreme Court spoke on this issue in Boyington v. State, 389 So.2d 485 (Miss.1980). In Boyington, the defendant argued that his employment as an undercover agent, after his arrest, violated his Thirteenth Amendment rights and 42 U.S.C. § 1994 (1974), the anti-peonage statute. Id. at 488. The supreme court found that the defendant freely and voluntarily entered into the arrangement with the MBN. Id. Therefore, we analyze the merits of Poole’s contention by looking to see if the record supports his assertion that he was compelled to work in the service of the MBN against his will.
¶ 8. Poole admits that he voluntarily agreed to become a confidential informant. However, he asks this Court to disregard this agreement and find that the elements of peonage exist. Peonage is “defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness.” Clyatt v. United States, 197 U.S. 207, 215, 25 S.Ct. 429, 49 L.Ed. 726 (1905). Poole contends that the State subjected him to unlawful and illegal peonage by force or by intimidation and that the State also imposed on him a dangerous duty of being a confidential informant. Poole explains that the State made his service as a confidential informant compulsory by subjecting him to the constant fear of criminal prosecution if he did not do the MBN’s bidding, and by causing him to believe that his work and service as a confidential informant were necessary to avoid criminal prosecution.
¶ 9. We are perplexed by Poole’s argument since he never actually per *1287 formed any act as a confidential informant. Moreover, Poole does not inform us of the terms and conditions of his agreement with the State, and we found no such agreement in the record. The only evidence which does exist regarding the agreement is that Poole would act as a confidential informant and that he would not make any contact with May. However, the record is replete with evidence that Poole never served as a confidential informant. The MBN learned that Poole violated the prohibition against contacting May and terminated the agreement.
¶ 10. We find no merit in Poole’s claim of involuntary servitude and peonage. What we do find is that Poole agreed to become a confidential informant, or at least the MBN agents thought he did, and thereafter violated the one known term of the agreement, resulting in the agreement’s termination without Poole’s ever performing any service. Therefore, we affirm Poole’s conviction and sentence.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF UNLAWFUL SALE OF MORE THAN ONE OUNCE OF MARIJUANA AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS TO BE SERVED ON POST-RELEASE SUPERVISION AND FINE IN THE AMOUNT OF $10,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.