**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2005-CT-00071-SCT**

*OLAN CALLINS*

*v.*

*STATE OF MISSISSIPPI*


**ON WRIT OF CERTIORARI**


| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2005 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REINSTATED AND AFFIRMED - 02/21/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. Olan Callins appealed the Alcorn County Circuit Court's judgment denying relief under the Mississippi Uniform Post-Conviction Collateral Relief Act. The Court of Appeals reversed the trial court judgment and remanded this case to the trial court for an evidentiary

hearing on the issue of whether Callins detrimentally relied on the plea agreement, thus invalidating the penitentiary sentence imposed upon him. **Callins v. State**, 2007 Miss. App. LEXIS 243 (Apr. 17, 2007), *r'hg denied*, 2007 Miss. App. LEXIS 619 (Sept. 18, 2007). However, we granted the State's petition for writ of certiorari. **Callins v. State**, 2007 Miss. LEXIS 655 (Nov. 29, 2007). Having now considered the critical issue raised on appeal, we find that the judgment of the Court of Appeals should be reversed, and the judgment of the Alcorn County Circuit Court should be reinstated and affirmed.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On July 26, 2004, Olan Callins, with his court-appointed counsel,[1] appeared before the Circuit Court of Alcorn County, Judge Sharion R. Aycock, presiding, and offered a plea of guilty to a grand jury indictment charging him with possession of a quantity of methamphetamine, a Schedule II controlled substance being more than ten grams but less than thirty grams, in violation of Mississippi Code Annotated Section 41-29-139(c)(1)(D) (Rev. 2005). Judge Aycock conducted an exhaustive examination of Callins in the presence of his attorney and the assistant district attorney concerning the voluntariness of Callins's guilty plea. At Judge Aycock's request, the assistant district attorney announced on the record the plea agreement reached between the State and the defendant (which provided, *inter alia*, for forfeiture of certain items by Callins and a joint sentence recommendation of

---

[1]After indictment, Callins executed a sworn affidavit of indigency stating, *inter alia*, that he was unemployed and had no real or personal property to employ retained counsel. The relevance of this fact will become evident later in this opinion.

2

ten years' imprisonment, but credit for time served in custody and suspension of the balance of the sentence). Judge Aycock informed Callins that if she accepted his guilty plea, sentencing would be deferred and another judge would impose the sentence. At the conclusion of the plea colloquy, Judge Aycock determined that Callins's guilty plea was freely and voluntarily offered, and she thus accepted Callins's plea of guilty and set the case for subsequent sentencing by a different judge.

¶3.     On August 5, 2004, Callins appeared with counsel before the Circuit Court of Alcorn County, Judge Paul S. Funderburk presiding. Notwithstanding the joint sentence recommendation which, if accepted, would have allowed Callins to serve his sentence free from incarceration, Judge Funderburk sentenced Callins to serve a term of twenty years in the custody of the Mississippi Department of Corrections, with twelve years suspended and eight years to serve, followed by five years of post-release supervision. Feeling aggrieved by Judge Funderburk's failure to sentence him consistent with the joint sentence recommendation, Callins, through counsel, filed a Motion to Clarify Sentencing Order, Conduct Due Process Hearing, or in the Alternative, to Grant Relief Under Post Conviction Relief Act.[2] Judge Funderburk, without conducting an evidentiary hearing, subsequently

---

[2]Callins likewise filed a *pro se* motion to withdraw his guilty plea, alleging that he was misled by the prosecutor's sentence recommendation of a probationary sentence when he clearly was not entitled to a probationary sentence pursuant to Mississippi Code Annotated Section 47-7-33 since he had a prior felony conviction. The record does not reflect that the trial judge ever ruled on Callins's *pro se* motion; however, even if we were to consider the merits of these allegations, the issue raised in Callins's *pro se* motion is rendered moot by this Court's decision in *Johnson v. State*, 925 So. 2d 86 (Miss. 2006).

3

entered an order denying Callins's motion, from which Callins appealed. This case was assigned to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶4. On appeal, Callins raised issues concerning whether the trial judge erred in (1) refusing to sentence Callins consistent with the joint sentence recommendation; (2) imposing a sentence which exceeded the maximum penalty provided by statute; and (3) refusing to grant an evidentiary hearing on Callins's post-conviction grievances. The Court of Appeals appropriately restated the issues to be (1) whether Callins's guilty plea was freely, knowingly, and voluntarily entered; (2) whether the trial judge abused his discretion in imposing sentence; and (3) whether Callins was entitled to an evidentiary hearing on his motion for post-conviction relief. While there appeared to be no disagreement among the members of the Court of Appeals on the first two issues,[3] the majority's treatment of Issue III generated a dissent from Judge Carlton, and her dissent was joined by Presiding Judge Myers. We agree with the Court of Appeals in its treatment and disposition of the first two issues; therefore, having granted certiorari, we limit the question on today's review. Miss. R. App. P. 17(h).

¶5. In a seven-two opinion (one judge not participating), the Court of Appeals found that while Callins's guilty plea was freely, knowingly, and voluntarily entered and that Judge Funderburk did not abuse his discretion in imposing sentence, Callins was entitled to an

_____

[3]We feel comfortable in making this statement inasmuch as the dissent addresses only the third issue.

4

evidentiary hearing on the issue of whether he detrimentally relied on the joint plea agreement between himself and the State of Mississippi. The Court of Appeals found that, even though Callins's motion for post-conviction relief did not substantially comply with Mississippi Code Annotated Section 99-39-9 (Rev. 2007), sufficient evidence existed in the record to warrant affording Callins an evidentiary hearing. *Id.* at **9-10, ¶10. Specifically, relying on this Court's decisions in *Moody v. State*, 716 So. 2d 592 (Miss. 1998), and *Boyington v. State*, 389 So. 2d 485 (Miss. 1980), the Court of Appeals held that an evidentiary hearing was necessary to determine whether Callins in fact satisfied his obligation to forfeit the property pursuant to the plea agreement. *Id.* at **10-11, ¶11. The Court of Appeals reasoned that if Callins forfeited his property, then he had relied upon the plea agreement to his disadvantage, since he had been led to believe that the sentencing recommendation would be accepted.[4] *Id.* at **10-13, ¶¶11-13. Additionally, the Court of Appeals held that the trial court had knowledge of the plea agreement and allowed a continuance in order to give Callins additional time to complete the forfeiture, thus participating in the plea agreement. *Id.* Accordingly, the Court of Appeals reversed the trial court judgment denying post-conviction relief, and remanded the case to the trial court, stating that "if the trial court determines that Callins has substantially complied with his obligations under the plea agreement to his detriment, then, pursuant to *Moody* and

---

[4]The majority stated that "[i]n order to show detrimental reliance, the defendant must show some 'additional servitude to the government.' *Callins*, 2007 Miss. App. LEXIS 243, *10, ¶11 (quoting *Christie v. State*, 915 So. 2d 1073, 1075 (Miss. Ct. App. 2005)).

5

***Boyington***, the trial court is duty bound to sentence him consistent with his plea bargain."

***Id.***

¶6.     However, in her dissent, Judge Carlton found that Callins was not entitled to an evidentiary hearing, stating, *inter alia*:

> I disagree with the majority's determination that Callins is entitled to an evidentiary hearing on the issue of whether he detrimentally relied upon the plea agreement by virtue of his cooperation with the forfeiture proceedings. A trial judge is not bound to accept the sentencing recommendation of the State where he does not involve himself in the plea bargaining process. Moreover, Callins's claim was properly dismissed without a hearing as it was unsupported by the affidavits of others and directly contradicted by his sworn testimony at the plea hearing.

***Callins***, 2007 Miss. App. LEXIS 243, *21, ¶22 (Carlton, J., dissenting).

¶7.     After its motion for rehearing was denied by the Court of Appeals, the State of Mississippi filed with the Court a petition for writ of certiorari, which we granted. We thus focus our discussion on the crucial issue presented on writ of certiorari.

## DISCUSSION

### WHETHER CALLINS WAS ENTITLED TO AN EVIDENTIARY HEARING ON HIS MOTION FOR POST-CONVICTION RELIEF.

¶8.     "When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo." ***Lambert v. State***, 941 So. 2d 804, 807 (Miss. 2006) (quoting ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999); *see also* ***Bank of Miss. v. S. Mem'l Park, Inc.***, 677 So. 2d 186, 191 (Miss. 1996)).

6

¶9.     Returning to the relevant facts of today's case concerning the proceedings before the trial court, a careful review of the transcript of the guilty plea hearing reveals that on July 26, 2004, Judge Aycock conducted an extensive examination of Callins to satisfy herself that Callins understood his constitutional rights, as well as those constitutional rights he was giving up with his guilty plea.  In each instance, Callins stated that he understood his rights and that he was giving up his rights by pleading guilty.  In open court, Callins was informed of the minimum and maximum penalties for the methamphetamine possession charge to which he was pleading guilty, that being a minimum sentence of six years imprisonment, a maximum sentence of twenty-four years imprisonment, and a maximum fine of $500,000. Judge Aycock then inquired:

> Q.  Mr. Callins, do you understand and represent to the Court that you understand the minimum mandatory sentence as well as the maximum sentence and fine that this Court could impose?
> A.  Yes.

Judge Aycock then learned that Callins had engaged in a plea agreement with the State:

> THE COURT:   Does the State have a recommendation in his case?
>
> [ASSISTANT DISTRICT ATTORNEY]:   We do, Your Honor.  We are requesting that sentencing be deferred.  As part of the plea agreement, there are certain items which are being forfeited, and there are individuals not in court today who have expressed an interest in the items seized; and, therefore, it is necessary to get their signature on the forfeiture items.  But the recommendation will be, Your Honor, the defendant be sentenced to ten years with the Mississippi Department of Corrections, that he be given credit for the time he has already served with the balance suspended and placed on three years post-release supervision, forfeit those items seized, and it is a sum of cash and a vehicle, Your Honor, seized on the day of arrest. $100 to the Mississippi Crime Lab, $100 to the Mississippi Crime Victims Compensation

Fund and court costs. We do not request a fine, Your Honor, due to the value of the items seized.

Judge Aycock again questioned Callins:

Q. Do you understand that even though the State is making a recommendation that this Court is not bound to accept the State's recommendation and could impose the maximum sentence of 24 years, the maximum fine of a half million dollars and/or both?
A. Yes.
Q. You have heard it announced that sentencing is going to be deferred; is that correct?
A. Yes.
Q. Mr. Callins, do you understand that that was going to require you to report back here next week for sentencing?
A.      Yes.
. . . .
Q.  Mr. Callins, you're going to be back before the Court next week as announced as a condition to your plea here today. I'm asking you do you understand that another judge will be here next week?
A.      Yes, sir (sic).
Q. Do you agree that another judge other than myself – I've accepted your plea. Do you agree that another judge will do the sentencing next week?
A.      Yes.

¶10.    On August 5, 2004, the Alcorn County Circuit Court, Judge Paul Funderburk, presiding, conducted Callins's sentencing hearing. Judge Funderburk rejected the State's recommendation,[5] stating:

THE COURT: I note in the court file that he signed an affidavit of indigence on September 18, 2003, stating that he was unemployed, earned zero dollars per week, that he didn't own an automobile, he didn't own any property, that

---

[5]As part of the plea agreement, Callins agreed to forfeit the property seized. It is apparent from the record that the property had not actually been forfeited at the time of the sentencing hearing due to the competing interests of other individuals who were also claiming an interest in the property to be forfeited. However, this fact is of no moment in the disposition of today's case.

he had zero dollars in checking, zero dollars in savings. His assets were zero. And based on that affidavit, which apparently was perjured, he was appointed counsel, a public defender. I have also reviewed the presentence investigation on Mr. Callins, which shows that he has six prior felony convictions.[6]

Taking his previous record into consideration and the nature of the charge, the minimum and maximum penalties, it is the sentence of the Court, Mr. Callins, that you serve a term of 20 years in the custody of the Mississippi Department of Corrections. Twelve of those years shall be suspended, leaving you eight to serve. You are ordered to pay a two thousand dollar fine and all cost of court. Upon your release you will be on five years post-release supervision. You will be in custody of the sheriff to await transportation.

¶11. Consistent with the sentence imposed upon Callins in open court, Judge Funderburk entered an order sentencing Callins to twenty years in the custody of the Mississippi Department of Corrections, with twelve years suspended, and five years of post-release supervision. Additionally, Callins was ordered to pay $281 in court costs and a $2,000 fine. On August 10, 2004, Callins, filed, *pro se*, a Motion to Withdrawal (sic) Guilty Plea pursuant to Mississippi Uniform Rule of Circuit and County Court Practice 8.04 (A).

¶12. On October 6, 2004, Callins, through counsel, filed a Motion to Clarify Sentencing Order, Conduct Due Process Hearing, or in the Alternative, to Grant Relief Under Post Conviction Relief Act, wherein Callins stated that he, his counsel, and the Assistant District Attorney all believed that the sentence recommendation would be followed by the sentencing judge. However, Callins attached no affidavits to his motion. Callins requested that the trial

---

[6]When Callins was before Judge Aycock to enter his guilty plea, Judge Aycock requested Callins to reveal "all of your prior felony history." After conferring with his counsel, Callins informed Judge Aycock of a 1990 conspiracy conviction in Madison County, Tennessee, for which he had served time. When Judge Aycock inquired if there were "[a]ny other felonies," Callins responded, "No."

court give him a full hearing concerning his sentence and clarify its order concerning that sentence. On September 30, 2005, Judge Funderburk entered an order entitled "Order Denying Defendant's Motion to Clarify Sentencing Order, Conduct Due Process Hearing, or in the Alternative, To Grant Relief Under Post Conviction Relief Act."

¶13. In his detailed, three-page order, Judge Funderburk, without a hearing, found from the record (including the transcript of the guilty plea hearing before Judge Aycock), that his sentencing order was unambiguous and required no clarification. Judge Funderburk likewise found, *inter alia*, that Callins acknowledged the minimum and maximum penalties for the crime to which he pleaded guilty; that Callins acknowledged that he understood the sentencing judge was not bound by the sentencing recommendation which had been read in open court before Judge Aycock; and that Callins had one year of college and certainly understood his rights and those rights he was giving up by his guilty plea. Judge Funderburk also stated that a pre-sentence investigation report prepared by an officer with the Mississippi Department of Corrections showed that Callins had six prior felony convictions, although Callins had sworn under oath during his plea colloquy with Judge Aycock that he had only one prior felony conviction. Judge Funderburk further stated in his order that Callins made yet another perjured statement when he acknowledged before him at the time of sentencing that he had been "gainfully employed in the used car business," and when he acknowledged before Judge Aycock that he had been employed at Millennium Cars, Inc., for seven years. On the other hand, in order to secure a public defender at the time of arraignment, Callins signed a sworn affidavit of indigence stating that he was unemployed with no income and

10

had no real or personal property. Finally, in his order denying post-conviction relief, Judge

Funderburk stated:

> In arriving at a sentence, the Court took into consideration the nature of the charge against Callins, the minimum and maximum sentences provided by statute for the crime to which he pled guilty and his previous felony history. The trial judge is "solely responsible for determining the appropriate sentence. The trial judge does not have to accept any sentence recommendation made during plea negotiations." Robinson v. State, 836 So. 2d 747, 751 (Miss. 200[2]).
>
> Allegations by a movant in post-conviction pleadings that are completely contradicted by his sworn testimony in the record, as in this case, do not require a hearing. Dawkins v. State, 2005 WL 1384335 (Miss. Ct. App. 2005), citing Taylor v. State, 682 So. 2d 359, 364 (Miss. 1996). Therefore, Callins' motion shall be, and the same is hereby, denied and dismissed for this reason.
>
> Furthermore, Callins' motion does not substantially comply with the requirements of Miss. Code, 1972, Ann., Section 99-39-9, and the same is hereby, denied and dismissed for this reason also.

¶14. On this record, the Court of Appeals, in reliance on this Court's decisions in *Boyington* and *Moody*, determined that Callins was entitled to an evidentiary hearing before the trial judge to determine (1) if Callins had satisfied his part of the plea agreement by doing all he could do to forfeit certain personal property and, if so, (2) whether Callins had detrimentally relied on the provisions of the joint plea agreement between himself and the State, thus requiring the trial court to sentence Callins pursuant to the plea agreement. *Callins v. State*, 2007 Miss. App. LEXIS 243, **10-13, ¶¶11-13.

¶15. In her dissent, Judge Carlton thoroughly discussed and distinguished both *Boyington* and *Moody*, finding instead that the case *sub judice* was more akin to *Martin v. State*, 635

11

So. 2d 1352 (Miss. 1994). **Callins**, 2007 Miss. App. LEXIS 243, \*\*21-39, ¶¶22-44 (Carlton, J., dissenting). We agree with Judge Carlton's analysis.

¶16. In **Boyington**, the defendant was indicted for the crime of selling less than one kilogram of marihuana and later apprehended in the state of Pennsylvania. **Boyington**, 389 So. 2d at 487. Boyington waived extradition and en route back to Mississippi, he informed an agent with the Mississippi Bureau of Narcotics (MBN) that he wanted to try to "help himself." As a result, in exchange for a recommendation of probation, Boyington worked undercover with the MBN and developed about ten drug cases. **Id.** at 487-88. With both the district attorney and the circuit judge having knowledge of Boyington's undercover work with the MBN, and at the request of the MBN agent, the district attorney informed the circuit judge, prior to the trial date, of the proposed plea agreement, which included a sentence recommendation of probation. However, the circuit judge informed the district attorney that this recommendation was not agreeable with him, whereupon the district attorney made an alternative proposal to the circuit judge that he (the district attorney) would recommend a two-year penitentiary sentence in return for the defendant's guilty plea. This proposal was agreeable to the circuit judge. **Id.** at 488. However, Boyington declined the alternative proposed plea agreement, and the case ultimately went to trial, resulting in a jury verdict of guilty. The trial judge sentenced Boyington to a term of eight years in the state penitentiary. **Id.** at 488-90. This Court acknowledged, *inter alia*, that plea bargaining[7] was an essential

---

[7]However, we stay focused on the fact that Boyington ultimately did not plead guilty, but instead put his case before a jury, which found him guilty.

12

part of the criminal justice system and that the imposition of a sentence upon a criminal defendant is within the sound discretion of the trial judge, and such sentence will not be reversed or otherwise disturbed if the sentence is within the statutory limits. *Id.* at 491 (citations omitted). Notwithstanding this Court's acknowledgment of these basic precepts, and without any citation to relevant authority, this Court concluded:

> However, under the peculiar facts of this case, where we do not find error which requires reversal for a new trial, but where the appellant, with the knowledge of the trial court, worked for the Mississippi Bureau of Narcotics as an undercover informant, and was promised by the Bureau and district attorney that they would recommend probation, which led appellant to believe he would be placed on probation, we hold justice requires that the judgment of the lower court sentencing appellant to eight (8) years in the Mississippi State Penitentiary be vacated and that the case be remanded to the lower court, with instructions that appellant be placed on probation under such terms and conditions as the lower court may prescribe.[8]

*Id.*

¶17.    As Judge Carlton pointed out in her dissent, *Boyington* is distinguishable for several reasons, including the fact that, contrary to the conduct of the trial judge in *Boyington*, Judge Aycock and Judge Funderburk, in the case *sub judice*, in no way involved themselves in the

---

[8]The majority's opinion generated a dissent from Justice Broom, joined by Justice Walker, wherein Justice Broom stated, *inter alia*, "I am not willing that we should for the first time ever, absent any statutory authority, where no reversible error is found, vacate a trial judge's order and tell him he must place on probation one found guilty by a jury." *Boyington*, 389 So. 2d at 493. In making this statement, Justice Broom emphasized that Boyington had initiated the plea bargaining process; there was an alternative recommendation for either a light sentence or probation; no one reneged on a promise; Boyington rejected the proffered two-year sentence; and even after a jury trial and verdict of guilty, the trial judge sentenced Boyington to a penitentiary term which was less than half the maximum sentence provided by statute. *Id.*

13

plea bargaining process between the State and Callins and his attorney. *Callins*, 2007 Miss. App. LEXIS 243, *28, ¶31 (Carlton, J., dissenting). In fact, at the plea hearing, Judge Aycock unequivocally informed Callins that the court was not bound by the State's recommendation of a sentence to time served, and that the court could instead impose the maximum twenty-four-year sentence. Callins clearly stated that he understood what Judge Aycock was saying to him.[9]

¶18. The Court of Appeals also cited this Court's decision in *Moody* to undergird its decision in the case *sub judice*. In *Moody*, the defendant was charged in a multi-count indictment on two counts of capital murder and one count of simple murder, meaning that if he went to trial and was found guilty of capital murder, he stood the possibility of being sentenced to death by the sentencing jury. *Moody*, 716 So. 2d at 593. In order to avoid the death penalty, Moody entered into a Memorandum of Understanding (MOU) whereby, in return for his guilty pleas and his cooperation to fully reveal his knowledge of the crimes for which he was indicted as well as an unsolved, unrelated murder and other crimes, the State would recommend to the trial judge that Moody receive two life sentences to run

---

[9]The Court of Appeals opined that since Judge Aycock was aware of the plea agreement at the plea hearing and continued the case for a subsequent sentencing hearing in order to allow Callins additional time to forfeit the subject property consistent with the plea agreement, "the trial court also involved itself in the [plea bargaining] process." *Callins*, 2007 Miss. App. LEXIS 243, **12-13, ¶13. Like Judge Carlton, we disagree that merely continuing the sentencing hearing until a future date somehow caused Judge Aycock to become a part of the plea bargaining process to justify the "detrimental reliance" argument. In fact, a continuance of the sentencing hearing allowed the sentencing judge to receive a pre-sentence investigation report on which the sentencing judge heavily relied in arriving at his sentence.

consecutively. *Id.* Also, pursuant to the MOU, Moody agreed to testify truthfully against his co-defendants at their trials. Moody's subsequent polygraph examinations concerning the facts and circumstances surrounding the murders suggested that Moody was indeed being truthful with law enforcement officials. *Id.* Notwithstanding this MOU and Moody's actions taken in reliance upon it, the trial judge refused at the plea hearing to accept Moody's guilty pleas, reasoning, *inter alia*, that the MOU had been entered into by a district attorney who was no longer serving; that the district attorney entered into the MOU without consulting the trial judge; that the district attorney should have "gotten authority" from the trial judge to enter into the MOU; that he "would hope that [the district attorney] would have consulted the alleged victim's family members," and that the "heinousness" of the crimes dictated that Moody should not be able to escape the death penalty. *Id.*

¶19. After granting Moody's petition for interlocutory appeal, this Court addressed the single issue of whether the MOU incorporating the plea agreement between Moody and the State should be enforced. Moody asserted that the MOU should be enforced because he was improperly induced to plead guilty by the State's promise that he would not be subjected to the death penalty. Further, he said he detrimentally relied on the MOU by (1) providing information on his involvement and the involvement of others in the murders, (2) disclosing fully all information within his knowledge concerning the murders for which he was indicted and another separate murder, (3) submitting to and passing polygraph examinations concerning his statements, and (4) agreeing to testify against his co-defendants. *Id.* at 593-94. This Court reversed and remanded for further proceedings, stating, *inter alia*:

15

One, the trial court clearly abused its discretion in flatly refusing to accept Moody's pleas of guilt based solely upon the reasons indicated in the record. Two, Moody did indeed detrimentally rely on the [MOU] by substantially performing many of the terms of the [MOU] *before* the trial court refused to accept the guilty pleas and enforce the [MOU].

*Id.* at 594 (emphasis in original). In finding that, on remand, the trial court must enforce the

MOU, *in toto*, we stated:

However this Court has never held that a trial court may decline to accept a proffered guilty plea to capital murder simply because *the court* does not wish to see the defendant sentenced to something less than death in exchange for valuable information about the charged offenses and other crimes. Moreover, no authority exists to support the trial court's other reasons for rejecting Moody's guilty pleas, such as his vague concern that the victims' families had not been consulted and his erroneous assertion that the district attorney exceeded its [sic] discretion in entering the [MOU] with Moody. To the contrary, the special prosecutor in this case, stated in response to Moody's petition for interlocutory appeal that his file reflected that the family members *were* consulted prior to the execution of the [MOU]. In addition, the special prosecutor noted that the trial court did not have the authority to enter into plea negotiations and that the prosecuting office, not the trial court, decides whether to seek the death penalty even in the most heinous capital murder cases.

*Id.* at 594-95 (emphasis in original).

¶20.   Likewise, as noted by this Court, since Moody was indicted for capital murder, the trial court had no sentencing options under Mississippi Code Annotated Section 99-19-101, since only a jury could make the determination that Moody should suffer the death penalty. If the sentencing jury was unable unanimously to agree on a sentence of either death, life without parole, or life, the trial judge would be mandated by statute to sentence the defendant to life imprisonment. *Id.* at 595. Also, we agreed with the State's assertion that it was an appropriate function of the prosecution, and not of the court, to decide whether the death

16

penalty would be sought in a capital murder case. *Id.* This Court likewise relied on *Edwards v. State*, 465 So. 2d 1085 (Miss. 1985), and *Boyington* to find that Moody had, in fact, detrimentally relied on the MOU, thus requiring its enforcement. *Id.*

¶21. Again, we agree with Judge Carlton that *Moody* is distinguishable from the case *sub judice*. *Callins*, 2007 Miss. App. LEXIS 243, *23, ¶24 (Carlton, J., dissenting). In today's case, Judge Funderburk, as the sentencing judge, focused on Callins's criminal history (six prior felony convictions) and Callins's untruthfulness with the court concerning his financial ability to hire a lawyer and his criminal history (stating under oath in open court that he had only one prior felony conviction). In arriving at his sentence, Judge Funderburk addressed in open court his reliance on the probation officer's pre-sentence report and the fact that Callins had lied under oath both to him and to Judge Aycock about his employment status and that he had lied to Judge Aycock when he stated to her under oath that he had only one prior felony conviction. Callins informed Judge Aycock at the plea hearing that he knew the court was not bound by any sentencing recommendation, and in the end, Judge Funderburk imposed a sentence of eight years to serve by way of imprisonment, which sentence was only one-third of the maximum statutory sentence which could have been imposed. *See* Miss. Code Ann. § 41-29-139(c)(1)(D) (Rev. 2005). Thus Judge Funderburk's actions are a far cry from the actions of the trial judge in *Moody*.

¶22. Finally, as Judge Carlton noted in her dissent, the facts and circumstances peculiar to the case *sub judice* are more akin to those set out in *Martin v. State*, 635 So. 2d 1352 (Miss. 1994). *See Callins*, 2007 Miss. App. LEXIS 243, **29-31, ¶¶33-35 (Carlton, J., dissenting).

In *Martin*, the defendant pleaded guilty to the crime of armed robbery on the day his case was set for trial in the Circuit Court for the Second Judicial District of Harrison County. During the plea colloquy, the trial judge informed Martin, *inter alia*, that: (1) armed robbery carried a mandatory minimum statutory penalty of three years; (2) since the State had abandoned its effort to seek the maximum penalty of life imprisonment, the trial judge had authority to sentence Martin to a term of imprisonment deemed to be less than Martin's life expectancy; (3) the then-applicable statute provided for no parole eligibility until the defendant had served at least ten years of a sentence of more than ten years; and (4) on a sentence of ten years or less, the defendant was required by statute to serve the sentence, day-for-day, without the possibility of parole. *Id.* at 1353. Upon the request of the trial judge, the prosecution informed the court that the plea agreement reached among the State, Martin, and Martin's counsel was that, in exchange for Martin's testimony against his co-defendants, the State would recommend a sentence of five years to run concurrently with a three-year sentence imposed by the Jackson County Circuit Court. *Id.* On at least three occasions, the trial judge informed Martin that he was not bound by the sentence recommendation and that he could impose upon Martin a sentence of up to thirty years, and Martin stated he understood. The trial court deferred sentencing in order to receive a "full-blown" pre-sentence report, stating, "I don't know whether or not I'll follow the recommendation." *Id.* At the sentencing hearing, the trial judge opined that Martin and his two co-defendants collectively had committed more than one hundred juvenile/adult misdemeanor/felony

18

crimes, and thus sentenced each defendant to a term of eight years, three years more than the bargained-for sentence. *Id.* at 1353-54.

¶23.   On appeal, Martin argued that the trial court was bound by the plea agreement since the plea agreement involved not only a recommended sentence, but also a provision that Martin would testify against his co-defendants; however, this Court affirmed the trial judge's eight-year sentence imposed upon Martin.[10] *Id.* at 1354. Citing *Moore v. State*, 394 So. 2d 1336 (Miss. 1981), we stated that if, during the plea colloquy, the trial court has informed the defendant that the court is not bound by any sentence recommendation, and if the record reflects that the trial court is not involved in the plea bargaining process and the prosecutor makes the recommended sentence pursuant to the plea agreement, the trial court commits no error by not following the State's sentencing recommendation, so long as the sentence imposed is within the maximum limits prescribed by the applicable statute. *Martin*, 635 So. 2d at 1355.  In *Martin*, this Court distinguished both *Boyington* and *Salter v. State*, 387 So. 2d 81 (Miss. 1980). *Id.* at 1354-55.

¶24.   With the facts of *Martin* and the case *sub judice* in mind, Judge Carlton stated in her dissent, *inter alia*, that Callins was informed of the plea agreement during the plea colloquy and the fact that the trial court was not bound by the State's recommendation; that Callins

---

[10]Normally a defendant has no right to a direct appeal after pleading guilty in the trial court, having instead to seek relief via the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1, *et seq*. (Rev. 2007).  However,  a defendant such as Martin may directly appeal from the trial court after a guilty plea when the only issue on appeal is the length of the sentence, and the defendant is not attacking the guilty plea itself. *Johnson v. State*, 925 So. 2d 86, 88 n1 (Miss. 2006) (citations omitted).

had the opportunity to inform the trial court of any perceived belief that the trial court would be bound by the sentence recommendation, and yet he not only failed to avail himself of this opportunity, but he instead clearly stated that he understood the trial court was not bound by the State's sentence recommendation; that *Martin* is consistent with the provisions of URCCC 8.04(B)(2) and URCCC 8.04(B)(4); that the State fulfilled its responsibility by making the agreed-upon sentence recommendation; and that Callins understandably "possessed a hope of leniency," but the sentencing judge, relying on the presentence investigation report and Callins's untruthful written and oral statements to both judges before whom he appeared, did not abuse his discretion in refusing to follow the joint sentence recommendation in imposing sentence. Thus, Judge Carlton "reject[ed] the majority's determination that the trial court may be bound to sentence Callins in accordance with the State's recommendation." *Id.* at **30-32, ¶¶34-36 (Carlton, J., dissenting). We thus find that *Martin* is applicable to the case *sub judice*, as opposed to *Boyington* and *Moody*. In other words, our cases discussing detrimental reliance are not applicable to today's case.

¶25.    In sum, Judge Funderburk did not commit error by summarily denying and dismissing Callins's motion for post-conviction relief. Mississippi Code Annotated Section 99-39-11(2) (Rev. 2007) provides that the trial judge may summarily dismiss a motion for post-conviction relief "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the [prisoner] is not entitled to any relief." Indeed, Judge Funderburk found that the allegations contained in Callins's post-conviction relief motion were contradicted by Callins's sworn testimony at the plea hearing before Judge Aycock, as

20

revealed in the transcript of the plea hearing. Therefore, pursuant to the statute and case law, Judge Funderburk was not required to conduct an evidentiary hearing on Callins's post-conviction relief motion. *Taylor v. State*, 682 So. 2d 359, 363-66 (Miss. 1996); *Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991). *See also King v. State*, 679 So. 2d 208, 210-11 (Miss. 1996); *Smith v. State*, 636 So. 2d 1220, 1224 (Miss. 1994).

¶26.   Having fully addressed the issue before us, we feel compelled to address certain language contained in the Court of Appeals' opinion in the case *sub judice*. That court stated, inter alia:

> While Callins did respond affirmatively when asked if he understood that the trial court was not bound by the State's recommendation, it is of no moment. The same may well be a misstatement of the law where detrimental reliance exists and a defendant has performed his part of the plea agreement. Additionally, inherent in the question itself are two logical interpretations. First, "I understand that the judge is not a 'rubber stamp' for the district attorney in sentencing." Second, "Even though I understand the judge is not a 'rubber stamp' for the district attorney in sentencing, I truly believe the judge will honor his request, and this belief is a significant inducement to my plea of guilt." Each interpretation is equally logical.
>
> A circuit judge has the most solemn duty to make absolutely certain, to the very best of his or her ability, that a defendant is making a truly free and voluntary plea. A much more telling colloquy of the impact the plea bargain recommendation had on Callins's, or would have on any defendant's, decision to plead guilty would be, "Mr. Callins, I do not intend to honor your plea bargain with the State. I do not care if you have agreed to forfeit your claim to $30,000 worth of property. At your sentencing hearing, I do not intend to suspend your sentence and place you on post-release supervision. Instead, I intend to sentence you to serve twenty years in the penitentiary. Mr. Callins, do you still wish to plead guilty?" It is only when we can say with confidence from the record before us that Callins's answer would have been 'yes,' evincing a lack of detrimental reliance upon the recommendation, should we deny an evidentiary hearing. Today, we are not so prepared.

21

*Callins v. State*, 2007 Miss. App. LEXIS 243, **19-20, ¶¶19-20.

¶27.   With the utmost respect for our learned colleagues on the Court of Appeals, we reject this analysis. We can interpret their language but one way.  The Court of Appeals suggests trial judges, at the time of the guilty plea colloquy, declare that he/she does not intend to accept the sentence recommendation; and the trial judge must declare the specific sentence he/she intends to impose, without taking the matter under advisement and, many times, without the benefit of a presentence investigation report.  According to the Court of Appeals, this information must be revealed to the defendant at the time of the plea hearing.

¶28.   First of all, the revised guilty plea colloquy suggested by the Court of Appeals would judicially abrogate the provisions of Rule 11.02 of the Mississippi Uniform Rules of Circuit and County Court Practice.  URCCC 11.02 affords our trial judges the opportunity to direct, prior to sentencing, that a presentence investigation be conducted and a report submitted pursuant to the investigation.   Such a presentence report usually will contain vital information to aid the trial judge concerning sentencing.  According to URCCC 11.02, the presentence report may contain such information as the defendant's criminal history; financial condition; educational background; employment background and military record; social record regarding family relationships, marital status and residence history; and the environment to which the defendant would return if given probation. URCCC 11.02 also provides that the presentence investigation can focus on gathering information about special resources available to assist the defendant if he/she is in need of rehabilitative programs or vocational programs, and/or a physical and mental examination.

22

¶29. We pose this question: What if, at the time of the plea hearing, the trial judge has no clue as to whether he/she might later decide not to accept the sentence recommendation because of what the trial judge will learn after receiving a presentence report and/or at a later sentencing hearing, where evidence of aggravating and mitigating circumstances will be received? The practical effect of the Court of Appeals' approach via this revised plea colloquy would be that sentencing hearings after guilty pleas in which there exist sentence recommendations would become obsolete. The trial judge would be compelled to inform the defendant at the plea hearing as to whether he/she intended to accept the sentence recommendation.

¶30. Recently, in *Taggart v. State*, 957 So. 2d 981, 994 (Miss. 2007), this Court stated:

> We also take this opportunity to make a few additional observations about sentencing in general. There are at least four generally recognized factors that any sentencing judge should consider in the exercise of discretionary sentencing of any defendant who stands before the court for imposition of sentence: (1) Rehabilitation; (2) Retribution; (3) Separation from society; and (4) Deterrence, both general and specific.

*Id.* at 994. We then proceeded to discuss in more detail the importance of the trial judge's consideration of these well-recognized sentencing factors. *Id.* at 994-95. However, based on what the Court of Appeals would now require of a judge during the guilty plea colloquy, our trial judges no longer would be able to consider these factors in cases involving a plea agreement, because the trial judge would be unable to defer sentencing to gather additional information. According to the Court of Appeals, the trial judge would have to tell the

23

defendant at the time of the plea hearing what specific sentence he/she intends to impose upon the defendant.

¶31. Also, it is hardly an uncommon occurrence that one judge in the judicial district would conduct a plea colloquy with a defendant and accept a negotiated guilty plea (or an open plea), and another judge in the judicial district would impose sentence upon the defendant at a later date. This is exactly what happened in today's case. We thus state the obvious. Based on the Court of Appeals' revised plea colloquy, Judge Aycock was required to inform Callins at the plea hearing that Judge Funderburk was not going to accept the State's plea recommendation. Not only that, Judge Aycock was required to inform Callins as to the specific sentence Judge Funderburk would later impose upon Callins, even before Judge Funderburk received the presentence report that revealed that Callins had not one prior felony conviction (as he stated under oath to Judge Aycock), but six prior felony convictions.

¶32. Judge Carlton succinctly analyzed the majority's opinion:

> The majority's holding undermines the purpose and validity of the guilty plea colloquy. Where the transcript of the plea colloquy reflects that a defendant was fully informed regarding a certain consequence of his guilty plea, he should not later be heard to claim that he was unaware of the consequence.

*Callins*, 2007 Miss. App. LEXIS 243, \*\*38-39, ¶44 (Carlton, J., dissenting).

¶33. We thus reject the notion that our trial judges, at the time of the guilty plea colloquy in cases involving plea agreements, must be required to declare: (1) that they do not intend to accept the sentence recommendation; and (2) the specific sentence they intend to impose;

24

so that this information can be conveyed to the defendant before accepting the defendant's guilty plea.

¶34. In sum, we find this issue raised by the State of Mississippi in its petition for writ of certiorari meritorious.

## CONCLUSION

¶35. For the foregoing reasons, we reverse the judgment of the Court of Appeals and reinstate and affirm the Alcorn County Circuit Court's judgment denying Callins's motion for post-conviction relief.

¶36. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REINSTATED AND AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**