## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-IA-00285-SCT

*KENNETH MOODY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/96 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL ADELMAN |
| | ALLISON STEINER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/11/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/2/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case, we consider whether the trial court abused its discretion in refusing to accept a proffered guilty plea in a capital case where the prosecutor agreed to the plea and declined to pursue the death penalty in exchange for the defendant's cooperation. We conclude that the trial court abused its discretion. Thus, we reverse and remand this cause of action for further proceedings consistent with this opinion.

## I.

¶2. In 1995 in Perry County, Mississippi, Kenneth Moody (Moody) was indicted for two counts of capital murder and one count of simple murder. On June 22, 1995, Moody entered into a written, signed agreement with the State entitled "Memorandum of Understanding" (the agreement). Pursuant to the agreement, Moody would plead guilty to the murder charges and would cooperate fully by making complete disclosures to the State regarding his participation in and knowledge of the charged offenses. Moody further agreed to provide testimony against his co-defendants. In exchange for Moody's pleas and cooperation, the State agreed to recommend that he be sentenced to two consecutive terms of life imprisonment without parole. The State further agreed not to seek the death

penalty.

¶3. The agreement also required that Moody provide truthful testimony before the grand jury if necessary, truthful testimony at trial if necessary, and take a polygraph examination regarding all matters disclosed to law enforcement agents, including information about the charged offenses. Also, the agreement required that Moody truthfully and completely reveal to the State all information and knowledge he possessed concerning a separate, unsolved murder, as well as any other crimes.

¶4. Pursuant to the agreement, Moody provided the State with the information. He also satisfied polygraph examinations concerning his statements about all of the murders in accordance with the agreement. However, at a subsequent plea hearing, the trial court refused to accept Moody's guilty pleas, stating the following:

> . . . I will certainly take judicial notice of the fact that prosecutors . . . have to have a great deal of discretion in dealing with matters that are before them. I fully recognize that one of those discretions being whether or not to seek the death penalty in capital cases. However, let me also point out several things that have occurred in this particular matter. One being that this Memorandum of Understanding was entered into by the previous District Attorney, who is not now serving. While I . . . appreciate [the] pronouncement that [the State] feel[s] bound by it, this Court is of the opinion that that Memorandum of Understanding will not be enforced by this Court for a number of reasons. . . [T]he District Attorney exceeded his discretion in entering into the [agreement] without consulting with the Court . . . [H]e had the decision to decide whether or not to seek the death penalty, but . . . he should have gotten authority of this Court before entering into any memorandum of understanding. . . . I would hope that he would have consulted the alleged victim's family members. And I would note for this record the heinousness of this alleged crime . . . I am not going to enforce the [agreement].

¶5. Following this denial, Moody again moved to enforce the agreement. The circuit court promptly denied his motion, but certified the matter for interlocutory appeal to this Court. With this Court's permission, Moody takes such appeal and asserts a single argument.

## II.

**THE MEMORANDUM OF UNDERSTANDING BETWEEN APPELLANT AND THE STATE OF MISSISSIPPI, INCORPORATING THE PLEA AGREEMENT BETWEEN APPELLANT AND THE STATE OF MISSISSIPPI, SHOULD BE ENFORCED.**

¶6. Moody relies upon two theories in support of his argument that the agreement should be enforced. First, he asserts that his guilty pleas were induced by the State's promise that he would not face the death penalty, and therefore the State's end of the bargain must be enforced. Second, he argues that he detrimentally relied on the agreement when he (1) gave several statements to the State about his and others' participation and involvement in the various murders; (2) fully disclosed all information and knowledge he possessed about the charged crimes, as well as another murder; (3) buttressed the credibility of his statements by submitting, satisfactorily, to lie detector tests; and (4) made himself available to testify against the co-defendants charged with the crimes. In light of this reliance and performance, Moody contends that the trial court must be compelled to enforce the

agreement. He also points to the fact that the special prosecutor in the instant case (who has since been removed by the trial court) did not contest his motion to enforce the agreement.

¶7. The State responds that the trial court should not be compelled to enforce the agreement since the trial court was not a party to the agreement. In addition, the State argues that, generally, trial courts are not bound by sentencing recommendations that are agreed upon by the parties. Lastly, the State suggests that the terms of the agreement are not frustrated by the court's refusal to accept the guilty plea, since forcing the case to trial in no way prevents the prosecutor from declining to seek the death penalty at Moody's trial.

¶8. We conclude that Moody is correct in arguing that he is entitled to have the plea agreement enforced for two reasons. One, the trial court clearly abused its discretion in flatly refusing to accept Moody's pleas of guilt based solely upon the reasons indicated in the record. Two, Moody did indeed detrimentally rely on the agreement by substantially performing many of the terms of the agreement *before* the trial court refused to accept the guilty pleas and enforce the agreement. As Moody argues, his detrimental reliance and performance of the terms of the agreement mandate that the agreement be enforced.

### III.

¶9. We recognize that a criminal defendant has no absolute right to have his guilty plea accepted by a trial court. A trial judge may decline to accept such a plea in the exercise of sound judicial discretion. Miss. Code Ann. § 99-15-53 (1994); *Martin v. State*, 635 So. 2d 1352 (Miss. 1994). However as we explained in *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989), when a "trial court has discretion in a matter, [it is] impl[ied] that there is a limited right to be wrong." When reviewing a decision that is within a trial court's discretion, the first question we ask is if the court applied a correct legal standard. *Id.* (*citing *Detroit Marine Engineering v. McRee*, 510 So. 2d 462, 467 (Miss. 1987); *Croenne v. Irby*, 492 So. 2d 1291, 1293 (Miss. 1986)). If a correct legal standard was applied, the next question is whether the trial court's "decision was one of those several *reasonable* ones which could have been made." *Burkett*, 537 So. 2d at 446 (emphasis added).

¶10. We have, on numerous occasions, upheld a trial court's decision to refuse to accept guilty pleas where the defendants have either asserted viable defenses or insisted on their innocence. *See, e.g., Beard v. State*, 392 So. 2d 1143 (Miss. 1981) (finding the trial court acted within its sound discretion in rejecting a defendant's guilty plea where he continued to proclaim his innocence, but all the while urged the trial court to accept a guilty plea); *see also *Williamson v. State*, 388 So. 2d 168 (Miss. 1980) (holding that defendant's statement at plea proceeding clearly indicated defenses to crime charged).

¶11. However this Court has never held that a trial court may decline to accept a proffered guilty plea to capital murder simply because *the court* does not wish to see the defendant sentenced to something less than death in exchange for valuable information about the charged offenses and other crimes. Moreover, no authority exists to support the trial court's other reasons for rejecting Moody's guilty pleas, such as his vague concern that the victims' families had not been consulted and his erroneous assertion that the district attorney exceeded its discretion in entering the agreement with Moody. To the contrary, the special prosecutor in this case, stated in response to Moody's petition for interlocutory appeal that his file reflected that the family members *were* consulted prior to the

execution of the agreement. In addition, the special prosecutor noted that the trial court did not have the authority to enter into plea negotiations and that the prosecuting office, not the trial court, decides whether to seek the death penalty even in the most heinous capital murder cases.

¶12. An important fact is that, here, the trial court was not vested with any sentencing options. Moody stood charged with capital murder. Under the sentencing scheme of Miss. Code Ann. § 99-19-101, a jury would have to sentence Moody to death, life imprisonment without parole, or simply life imprisonment. In the event a jury could not agree upon a sentence, the trial judge is then required under the statute to enter a sentence of life imprisonment. In view of this sentencing scheme, it becomes apparent that this is not, then, a case where the defendant seeks to bind the court to a recommended sentence.

¶13. Moreover, it is a prosecutorial function to choose whether to seek the death penalty, a point acknowledged by the trial court. That court, nevertheless, sought to usurp this function, an act which constituted a clear case of impermissible judicial overreaching.

¶14. Because we find that no legal standard was relied upon by the trial court in rejecting the pleas and the agreement and because we find that the factors relied upon by the trial court in reaching its decision were unreasonable, we conclude that the trial court abused its discretion. **Burkett**, 537 So. 2d at 446.

## IV.

¶15. In addition to the fact that the trial court abused its discretion, Moody correctly argues that he detrimentally relied upon the agreement by fulfilling several of its terms and is therefore entitled to have the agreement enforced.

¶16. We have squarely held that agreements between the State and defendants must be upheld by the trial court where a criminal defendant has *detrimentally* relied upon the agreement. *See **Edwards v. State***, 465 So. 2d 1085 (Miss. 1985) (reversing trial court's refusal to quash an indictment for extortion where the defendant, pursuant to an agreement, resigned from his position in exchange for immunity from prosecution); *see also **Boyington v. State***, 389 So. 2d 485, 491 (Miss. 1980) (reversing eight year sentence where the defendant was promised probation in an agreement with the State in exchange for the defendant acting as an undercover agent; the guilty plea was rejected *after* the defendant performed the required undercover activity).

¶17. Similarly in the case at bar, Moody relied upon the terms of the agreement to his detriment by giving statements regarding the charged crimes and a separate murder and by fortifying those statements with lie detector tests *before* the proffered agreement was rejected by the trial court. This fact is not disputed by the State, and it is this fact which mandates that the agreement be enforced *in toto*.

¶18. In addition, we reject the State's argument that if it simply does not seek the death penalty at Moody's trial, then the present situation will be remedied. If the State proceeded to trial in this case, but did not seek the death penalty, the trial would be a waste of time and resources. Moreover, even though Moody's statements and lie detector test results would not be admissible at his trial, the State has still received, and possibly used, other benefits of the bargain that simply cannot be recouped by

Moody, such as the information that he provided to the State about others' participation in the charged offenses and the unsolved murder. Thus, in light of Moody's detrimental reliance upon and performance of many terms of the agreement and in light of the State having reaped the benefits of that reliance and performance, the agreement should be enforced by the trial court *in toto*.

**V.**

¶19. Because the trial court abused its discretion in rejecting the agreement, upon which Moody had detrimentally relied, we reverse and remand this cause of action for further proceedings consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., AND ROBERTS, J., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND MILLS, JJ. PITTMAN, P.J., AND WALLER, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶21. I disagree with the majority's determination that the circuit court abused its discretion in refusing to accept Moody's "Memorandum of Understanding." The trial judge is not bound to accept the District Attorney's sentencing recommendations made as part of a plea negotiation. Accordingly, I dissent.

¶22. Nothing in the Uniform Circuit and County Court Rules or our statutes governing pre-trial procedure requires the circuit court to accept the terms of a plea agreement. Miss. Code Ann. § 99-15-53 provides that "[a] district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without the consent of the court . . ." The State is bound to honor its agreement with the defendant. *Salter v. State,* 387 So. 2d 81, 83 (Miss. 1980). The circuit court, however, is not so constrained. *Moore v. State,* 394 So. 2d 1336, 1337 (Miss. 1981) . We require only that the trial court not abuse its discretion in sentencing a defendant who has entered a guilty plea in reliance upon the State's sentencing recommendation. *Martin v. State,* 635 So. 2d 1352, 1356 (Miss. 1994).

¶23. As distinguished from *Martin* and *Moore*, the circuit court did not sentence Moody in excess of the sentence recommended by the State. Rather, counsel for the defendant put before the judge a motion to enforce the "Memorandum of Understanding" since the special prosecutors representing the State were not those who negotiated the plea agreement. This was done as part of a proceeding to address the erroneous failure to enter an order of Moody's arraignment. Thus, the motion was denied even before it was established for the record that Moody had knowingly and intelligently entered a valid guilty plea or that he had been advised that the State's sentencing recommendation was not binding on the court. Surely we cannot hold the trial court in error for not honoring an agreement whose validity had not been determined.

¶24. Rule 8.04 (B)(4) of the Uniform Circuit and County Court Rules, adopted effective May 1,

1995, specifies that "the trial judge shall not participate in any plea discussion." It further provides that "[a]fter a recommended disposition on the plea has been reached, it may be made known to the court, along with the reasons for the recommendation, prior to the acceptance of the plea." Moreover, Rule 8.04 (B)(2)(b) expressly states that the State's recommendation to the trial court for a particular sentence is made "with the understanding that such recommendation or request will not be binding upon the court." Regardless of his reasons for denying the motion, therefore, the circuit judge was not bound to accept Moody's "Memorandum of Understanding" and should not be said to have abused his discretion in refusing it. Accordingly, I dissent.

**SMITH AND MILLS, JJ., JOIN THIS OPINION.**