799 So.2d 100 (2001)
John Paul VANCE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-CA-00674-COA.
Court of Appeals of Mississippi.
June 26, 2001.
Rehearing Denied September 4, 2001.
Certiorari Denied November 8, 2001.
*101 Jackson M. Brown, Starkville, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, MYERS, and CHANDLER, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arises from the Circuit Court of Calhoun County as a result of a motion for post-conviction relief filed by John Paul Vance. Vance was indicted for murder, but, pursuant to a plea agreement which included a sentencing recommendation of ten years, pled guilty to the charge of manslaughter. However, the trial judge refused to accept the sentencing recommendation and sentenced Vance to twenty years. Vance has assigned error to the lower court and asks for review of three issues which we have rephrased as follows: (1) whether his detrimental reliance on an unsanctioned plea bargain irreparably devastated his rights and warrants specific performance, (2) whether his attorney rendered ineffective assistance of counsel by failing to present the plea bargain to the court and to ascertain the likely sentence prior to Vance's waiving his Miranda rights and performing his part of the bargain, and (3) whether the trial court should have recused itself from ruling on the post conviction motion. He also asks us to notice as plain error any issue he has failed to present.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Vance was indicted for murder and confessed essentially to the following facts concerning the murder of Anthony Alford (Tony) of Derma, Mississippi. Tony and his wife, Geraldine, owned a convenience store in Calhoun County. Their employees included John Paul Vance, the subject of this appeal, and Tammie Jones. Geraldine, desiring to kill her husband, Tony, inquired whether Vance knew how she could complete the task. Vance testified that he doubted her seriousness but, nevertheless, explained to her that crystal methamphetamine would make Tony's *102 heart race.[1] She then gave Vance $300, and he purchased an "eight ball," about three and a half grams. She mixed the drug in a hot apple cider drink that she and Tony drank often. However, the drug merely made Tony hyper. Geraldine then gave Vance money to purchase more of the crystal methamphetamine. However, after mixing the drug in the drink for a second time, it merely created the same result. Eventually, Geraldine decided to take more drastic measures. After drugging her husband to a point of near unconsciousness, she attempted to suffocate him with a pillow. However, her attempts failed, and she called Vance, who was at the store, and asked him to come to her house and assist her in finishing the task. Vance took a car owned by Tammie, his fellow employee, and went to Geraldine and Tony's house. Once he arrived at the house, he noticed Tony laying in the bed, heavily sedated. Geraldine was straddling his chest and attempting to suffocate him with a pillow. After several failed attempts by Geraldine, Vance jumped on top of Tony and served him with a fatal shot to the head.
¶ 4. Vance's detailed confession arose from an alleged bargaining with the sheriff whereby the sheriff explained to Vance that he would get the district attorney to lower the charge from murder to manslaughter and to recommend a sentence of ten years. Vance related to the district attorney the details which are recounted in the foregoing paragraph, and the district attorney also agreed to the terms of the agreement as discussed between Vance and the sheriff.
¶ 5. At the plea hearing, Vance pled guilty to the reduced charge of manslaughter. The district attorney, in accordance with the plea agreement, recommended a sentence of ten years. The judge, however, refused to accept the district attorney's recommendation and sentenced Vance to the maximum term of twenty years. Vance timely filed a motion for post-conviction relief which was promptly denied by the trial court without an evidentiary hearing. Aggrieved because the trial court refused to honor the terms of the plea agreement and denied him a hearing on his post-conviction relief motion, Vance effectuated this appeal.

ANALYSIS OF THE ISSUES PRESENTED

1. Vance's Reliance On the Plea Agreement
¶ 6. Vance asserts that he relied on the plea bargain to his detriment. He argues that because the prosecutor presented the bargain without the knowledge and approval of the court, the prosecutor was unable to provide Vance with the "likely results." Vance argues that his decision to confess and to plead guilty was based on the terms of the agreement with the prosecutor. According to Vance, had the prosecutor not offered the plea bargain, he would not have confessed, pleaded guilty and assisted in the prosecution of Geraldine.
¶ 7. Ordinarily a trial judge is not bound by the terms of a plea agreement because it is the product of a bargaining process between the defendant and the prosecutor, and the judge is not a party to the agreement. See Martin v. State, 635 So.2d 1352, 1355 (Miss.1994). However, Vance points us to Moody v. State, 716 So.2d 592 (Miss.1998), for the proposition that even when a trial judge is not a party to the agreement, it must be upheld when the defendant has relied on it to his detriment.
*103 ¶ 8. In Moody, Kenneth Moody was indicted for two counts of capital murder and one count of simple murder. Id. at 593. He entered into an agreement with the State which required him, inter alia, to plead guilty to the murder charges and cooperate fully by making complete disclosures to the State regarding his participation in and knowledge of the charged offenses. Id. (¶ 2). The agreement required the State to recommend that Moody be sentenced to two consecutive terms of life imprisonment without parole and not seek the death penalty. Moody performed his part of the agreement, but the trial court would not accept Moody's guilty pleas. On appeal, the Mississippi Supreme Court held that Moody was entitled to have the agreement enforced in toto because Moody detrimentally relied on the agreement with the prosecutor by substantially performing many of the terms of the agreement before the trial court refused to accept the guilty pleas. Id. (¶ 8). The Moody court went on to rule that agreements between the State and defendants must be upheld by the trial court where a criminal defendant has detrimentally relied upon the agreement. Id. (¶ 16) (citing Edwards v. State, 465 So.2d 1085 (Miss.1985)(reversing the trial court's refusal to quash an indictment for extortion where the defendant, pursuant to an agreement, resigned from his position in exchange for immunity from prosecution)).
¶ 9. In the case at bar, Vance argues that he detrimentally relied on the agreement and substantially performed the terms of the agreement when he offered a detailed confession and subsequently pled guilty. Therefore, he was aggrieved when he did not receive the benefit of his bargain. While Vance's argument is legally sound, his facts do not fit within the confines of Moody. The case is distinguishable from Moody in that in Moody, the trial judge would not allow Moody to plead guilty to murder. Here, the trial judge did not refuse to allow or accept Vance's plea to the lesser charge of manslaughter even though he refused to follow the State's recommendation as to sentence. While we admit that there is some language in Moody which, at first blush, may seem to suggest that the Moody court held that the trial judge was duty bound to accept the State's recommendation, we do not find that to be the holding. As stated, the Moody court said, "the agreement should be enforced by the trial court in toto." The agreement in toto was to allow a plea to murder and make a recommendation that Moody be sentenced to two consecutive life terms.
¶ 10. We agree with Vance that under Moody a defendant is entitled to get the benefit of his bargain, and we find that Vance got just that. The terms of the agreement were: in exchange for a confession and guilty plea from Vance, the prosecutor would lower the charge from murder to manslaughter and offer a recommendation of ten years. Following Vance's compliance, the prosecutor upheld his end of the agreement by lowering the charge to manslaughter and recommending ten years as opposed to twenty. What Vance fails to incorporate into his analysis is that a recommendation is just that, a recommendation.

2. Ineffective Assistance of Counsel
¶ 11. Vance argues in his second issue that he received ineffective assistance of counsel due to his attorney's failure to inform the court of the terms of the plea agreement prior to his pleading guilty. He asserts that because the court was not informed, counsel was unable to provide him with the likely results. Vance further argues that his attorney misinformed him of the likelihood that the court would accept *104 the terms of the agreement; therefore, he was under the erroneous advisement that offering a detailed and self-incriminating confession and then pleading guilty would be in his best interest. Vance concludes his argument with the assertion that, because he did not know what sentence he would likely receive, his decision to confess and plead guilty could not be an informed decision.
¶ 12. The standard which must be met for proving ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The overriding principle undergirding the Sixth Amendment right to counsel is one of reasonably effective assistance under prevailing professional norms. See id. at 687-88, 104 S.Ct. 2052. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial, or in this case the plea hearing, cannot be relied on as having produced a just result. See id. at 686, 104 S.Ct. 2052. The defendant must first show that counsel's performance was deficient, or that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687, 104 S.Ct. 2052. Secondly, the defendant must show that counsel's deficiency prejudiced the defense. Id.
¶ 13. In the case sub judice, we do not find that defense counsel's performance was below that of the professional norm. As stated, counsel is not bound to garner assurances from the trial judge of the actual result. In fact under the plea bargaining procedures in our state, there is no mechanism available to defense counsel for accomplishing the task which Vance asserts should have been accomplished. While counsel should provide his client with all information available to counsel which counsel knows or believes will have an impact upon the sentence the client might receive, that in no way is to be construed as an obligation of counsel to assure the client of any particular result. Counsel apparently worked diligently to orchestrate a favorable outcome for Vance; however, the trial judge, within his discretion, decided that the recommendation as to sentence was a little too favorable for the offense committed and declined to follow the recommendation. The agreement did not guarantee, or emphatically state, that Vance would receive a ten year sentence. This argument lacks merit.

3. Recusal of the Trial Judge
¶ 14. Vance's third argument is that the trial judge should have recused himself because of the appearance of impropriety. He argues that because the judge was a participant in the plea hearing, which was the subject of the motion, and because he was privy to the events that took place during the hearing, the judge should have recused himself.
¶ 15. Vance cites Canon 3 of the Code of Judicial Conduct and Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986), as authority for his position. Canon 3 explains that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. In Rutland, the Mississippi Supreme Court said that "a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland, 493 So.2d at 954. Vance argues that in the instant case the judge's participation in the plea hearing gives the appearance of impropriety.
¶ 16. In the instant case, Vance does not provide us with, nor are we able to discern from our own reading of the record, an adequate basis with which to determine that the trial judge's ruling on the motion created an appearance of impropriety. *105 In an attempt to show that the trial judge conducted proceedings beneath the dignity of the court, Vance quite vaguely makes reference to "loud voices overheard from the court's chambers" and a statement from the sheriff indicating the sheriffs displeasure with the attorneys. However, Vance fails to provide a complete and coherent nexus or explanation as to what exactly took place or how it created an appearance of impropriety for the trial judge.
¶ 17. Finally, as to Vance's request that we notice as plain error any meritorious issue that he has failed to present, we can only say that none exists. Accordingly, we affirm the trial court's dismissal of Vance's motion for post-conviction relief.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY DENYING THE APPELLANT'S MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR.
NOTES
[1] Geraldine had earlier informed Vance that Tony had a heart condition.