975 So.2d 243 (2007)
Olan CALLINS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-CP-00071-COA.
Court of Appeals of Mississippi.
April 17, 2007.
Rehearing Denied September 18, 2007.
*244 Olan Callins, appellant, pro se.
Office of the Attorney General by W. Daniel Hinchcliff, for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. This is an appeal from an order of the Circuit Court of Alcorn County summarily denying a motion for post-conviction relief. Aggrieved by the lower court's disposition, Olan Callins now appeals and raises the following issues, listed verbatim:
I. DID THE TRIAL COURT SENTENCING JUDGE HON. PAUL S. FUNDERBURK IMPROPERLY DENY CALLINS POST-CONVICTION MOTION WHEN THE PLEA OF GUILTY WAS BASED ON STATE RECOMMENDATION AND COUNSEL'S ADVICE TO FORFEITED PROPERTY?
II. DID THE TRIAL COURT SENTENCING JUDGE HON. PAUL S. FUNDERBURK EXCEED THE MAXIMUM SENTENCE AUTHORIZED BY LAW?
III. WHETHER THE APPELLANT WAS ENTITLED TO AN EVIDENTIARY HEARING.
Finding that the issues raised on appeal are sufficient to justify an evidentiary hearing, we reverse and remand.

*245 FACTS AND PROCEDURAL HISTORY
¶ 2. Callins was indicted on January 10, 2003 for wilfully, unlawfully and feloniously having in his possession a quantity of methamphetamine, a schedule II controlled substance, being more than ten grams but less than thirty grams, in violation of Mississippi Code Annotated section 41-29-139(c)(1)(D) (Rev.1999). On July 26, 2004, he pled guilty before Circuit Judge Sharion Aycock to the charge against him after entering into a plea bargain with the State stipulating that the State would recommend that Callins be sentenced to ten years with the Mississippi Department of Corrections, given credit for the time already served with the balance of his ten year sentence suspended, placed on three years post-release supervision, forfeit money and property seized the day of his arrest totaling approximately $30,000 in value, pay $100 to the Mississippi Crime Lab, pay $100 to the Mississippi Crime Victims' Compensation Fund, and pay court costs. On July 26, 2004, the agreed upon recommendation of the State was voiced during Callins's plea hearing before Judge Aycock, however Callins was not sentenced at the conclusion of the plea hearing at the request of the State in order to allow Callins time to forfeit the property in question before being sentenced. At the time of the plea, a final forfeiture had not been ordered in the collateral forfeiture proceeding because of competing claims by other parties. On August 5, 2004, once most of the competing claims over the items were settled, Judge Paul Funderburk did not honor the negotiated plea bargain but instead sentenced Callins to twenty years in the custody of the Mississippi Department of Corrections with twelve years suspended, five years post-release supervision, a fine of five thousand dollars and court costs.
¶ 3. On September 29, 2004, Callins filed a "motion to clarify sentencing order, conduct due process hearing, or in the alternative, to grant relief under post conviction relief act." Within his motion, Callins stated that he pled guilty with the expectation that the State recommendation would be followed. He also stated that both his attorney and the prosecutor for the State would testify that they also expected the recommendation to be followed. Following a discussion of the record surrounding Callins's guilty plea, the Circuit Court of Alcorn County denied his motion for relief. Callins now appeals. Finding that the lower court erred in denying Callins an evidentiary hearing, we reverse.

STANDARD OF REVIEW
¶ 4. "When reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo." Lambert v. State, 941 So.2d 804(¶ 14) (Miss.2006) (quoting Brown v. State, 731 So.2d 595(¶ 6) (Miss.1999)).

ANALYSIS
I. WHETHER CALLINS GUILTY PLEA WAS FREELY, KNOWINGLY AND VOLUNTARILY ENTERED.
¶ 5. Rule 8.04 of the Uniform Circuit and County Court Rules states in pertinent part:
3. Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntary and *246 intelligently made must appear in the record.
URCCC 8.04(A)(3). In order to determine if a plea is voluntary, we look to see if "the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea." Spry v. State, 796 So.2d 229(¶ 6) (Miss.2001) (quoting Wilson v. State, 577 So.2d 394, 397 (Miss.1991)). Additionally, the defendant must be informed "that a guilty plea involves a waiver of the right to a trial by jury, the right to confront adverse witnesses, and the right to protection against self-incrimination." Id. (quoting Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992)).
¶ 6. In his September 29, 2004 motion, Callins stated that he, along with his attorney and the assistant district attorney, expected the sentencing court to follow the recommendation of the State. In essence, Callins is at odds with the fact that the sentencing judge elected not to follow the recommendation contained in the plea bargain. However, in most cases, "such a recommendation or request will not be binding upon the court." URCCC 8.04(B)(2)(b); Neal v. State, 936 So.2d 463(¶ 9) (Miss.Ct.App.2006). The record plainly shows that Callins was asked all required questions and expressed his understanding of the charges against him, the rights he was waiving in pleading guilty and the fact that the court was not bound by the recommendation of the State, although in Callins's case this oft-stated principle of law is not completely or totally accurate. Specifically, the trial court asked Callins,
Q. Do you understand that even though the State is making a recommendation that this Court is not bound to accept the State's recommendation and could impose the maximum sentence of 24 years, the maximum fine of half a million dollars and/or both?
A. Yes.
While members of this Court have expressed discomfort with the current state of the law surrounding plea bargains, sentencing recommendations and surprising a defendant with a sentence outside the bargained for recommendation, see Noel v. State, 943 So.2d 768 (¶¶ 12-18) (Miss.Ct. App.2006) (Roberts, J., concurring, joined by Lee, P.J., Southwick, Griffis and Barnes, JJ.), this issue is without merit.
II. WHETHER THE SENTENCING JUDGE ABUSED HIS DISCRETION IN SENTENCING CALLINS.
¶ 7. Callins claims that the sentencing judge improperly considered certain statements made by Callins in arriving at his sentence. Prior to entering a guilty plea, Callins submitted an affidavit of indigence in an effort to acquire the services of a court appointed attorney. Within the affidavit, dated September 18, 2003, he stated that he was unemployed. However, during his plea hearing on July 26, 2004, he stated that he had been gainfully employed with Millennium Cars, Incorporated, for the past seven years. Similarly, Callins stated during his plea hearing that he had been previously convicted of only one felony. In contrast to his claims, a pre-sentence investigation report listed the number of Callins's prior felony convictions at six, but indicates that he had only been incarcerated for those convictions twice.
¶ 8. In sentencing Callins, the lower court mentioned the facts that Callins had perjured himself concerning his employment and prior convictions, but also took into consideration the nature of the charge against him, the minimum and maximum *247 sentences provided by statute for the crime to which Callins pled guilty and his previous felony history. However, "sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Isom v. State, 928 So.2d 840(¶ 41) (Miss.2006) (quoting Wall v. State, 718 So.2d 1107(¶ 29) (Miss.1998)). As the sentence imposed upon Callins is within statutory limits, this issue is without merit.
III. WHETHER CALLINS WAS ENTITLED TO AN EVIDENTIARY HEARING ON HIS MOTION FOR POST-CONVICTION RELIEF.
¶ 9. Callins next argues that he should have been afforded an evidentiary hearing on his motion for post-conviction relief. In all motions for post-conviction relief, the prisoner must inform the court of information not within his personal knowledge that supports his grounds for relief, and must supply the court with affidavits of the witnesses that will testify to such information. Miss.Code Ann. § 99-39-9(1)(e) (Supp.2006). Mississippi Code Annotated section 99-39-19 (Rev.2000) states, in pertinent part, that:
If the motion is not dismissed at a previous stage of the proceeding, the judge, after the answer is filed and discovery, if any, is completed, shall, upon a review of the record, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition on the motion as justice shall require.
Miss.Code Ann. § 99-39-19(1). This Court has held that no evidentiary hearing is required when the sworn testimony of the defendant during the plea hearing is in complete contradiction to the allegations made in a motion for post-conviction relief. Rodolfich v. State, 858 So.2d 221(¶ 8) (Miss.Ct.App.2003) (citing Taylor v. State, 682 So.2d 359, 364 (Miss.1996)).
¶ 10. In dismissing Callins's motion, the trial court found that it did not substantially comply with the requirements of section 99-39-9. Additionally, the trial court found that Callins's allegations were completely contradicted by his sworn testimony in the record. In his motion, Callins indicated that both his attorney and the assistant district attorney that prosecuted his case would testify that they, as Callins did, expected the judge to follow the State's recommendation. However, Callins failed to supply the trial court with affidavits from those individuals stating as such. Nevertheless, the record contains sufficient evidence to warrant an evidentiary hearing.
¶ 11. The supreme court has "squarely held that agreements between the State and defendants must be upheld by the trial court where a criminal defendant has detrimentally relied upon the agreement." Moody v. State, 716 So.2d 592(¶ 16) (Miss.1998); see also, Boyington v. State, 389 So.2d 485, 491 (1980). In order to show detrimental reliance, the defendant must show some "additional servitude to the government." Christie v. State, 915 So.2d 1073(¶ 6) (Miss.Ct.App. 2005). This additional obligation must be performed before the trial court sentences the defendant. Moody, 716 So.2d at (¶ 17). As part of Callins's plea bargain, he agreed to forfeit approximately $30,000 of personal property. During Callins's sentencing hearing, his attorney informed the trial court that Callins had fully cooperated with the State concerning the forfeiture. Additionally, he stated that Callins and all other parties with competing claims on the property had agreed to forfeit their rights, although obtaining the signature of Callins's estranged wife was proving difficult. We find that the record clearly *248 shows that an evidentiary hearing is required in order to determine whether Callins satisfied his obligations with respect to the plea agreement.
¶ 12. Additionally, Boyington, a case cited in support by the Moody court, also supports our holding under the facts before this Court. In Boyington, the defendant was indicted and arrested for the sale of marijuana, but agreed to work as an informant for the Mississippi Bureau of Narcotics in exchange for a recommendation of probation. Boyington, 389 So.2d at 488. Following the completion of Boyington's bargained for assistance, which the trial court, all the while, had full knowledge of, the district attorney recommended probation, but the trial court refused. Id. The district attorney then recommended a sentence of two years, the next lesser sentence, which the trial court accepted, but Boyington refused to plea guilty with a two year recommendation and went to trial. Id. Following the jury's finding of guilt, Boyington was sentenced to eight years, and appealed. Id. at 487. The supreme court vacated the judgment of the trial court sentencing Boyington to eight years and stated "where the appellant, with the knowledge of the trial court, worked for the Mississippi Bureau of Narcotics as an undercover informant, and was promised by the Bureau and district attorney that they would recommend probation, which led appellant to believe he would be placed on probation" the agreement must be honored. Id. at 491.
¶ 13. Though there was no actual plea in Boyington, the case is still applicable to the case sub judice as, at the request of the State, the trial court did not immediately sentence Callins after accepting his guilty plea, but granted a continuance so that the property forfeiture could be completed. It is clear that Judge Aycock was fully aware of the agreement between the State and Callins when she agreed to delay sentencing in order to allow Callins to complete his end of the bargain. Judge Funderburk, Callins's sentencing judge, was informed of the agreement as well. Therefore, in addition to Callins's detrimental reliance upon the plea bargain, which Moody instructs requires enforcement of the agreement if Callins completed his part of the bargain before rejection of his agreement, the trial court also involved itself in the process by allowing a continuance of Callins's sentencing for the sole purpose of granting him additional time to complete his end of the agreement. As such, if the trial court determines that Callins has substantially complied with his obligations under the plea agreement to his detriment, then, pursuant to Moody and Boyington, the trial court is duty bound to sentence him consistent with his bargain.
¶ 14. The dissent argues that Moody is not controlling. In support, the dissent states that the Moody court "found that the trial judge impermissibly involved himself in the plea bargaining process by usurping a prosecutorial function, specifically, to decide whether the death penalty will be pursued." However, the Moody court, in no way, based its decision upon the trial court's involvement in the plea bargaining process because the trial court in Moody was not involved in the plea bargain. A thorough review of Moody would be beneficial.
¶ 15. In Moody, the defendant was charged with two counts of capital murder and one count of simple murder. Moody, 716 So.2d at (¶ 2). Moody agreed to plead guilty to the three counts if the State would recommend two consecutive life sentences without the possibility of parole and agree not to seek the death penalty. Id. Pursuant to the agreement, Moody agreed to cooperate fully with the State regarding *249 the murders, to include testifying against his co-defendants. Id. Additionally, the agreement required Moody to take a polygraph examination regarding his disclosures, as well as share with the State information concerning a separate, unsolved murder, and other crimes. Id. at (¶¶ 2-3). Moody fulfilled his obligations under the plea bargain, and the State recommended the above sentence, however, the trial court refused to accept Moody's guilty pleas. Id. at (¶ 4). In refusing to accept the plea, the trial judge stated, "The District Attorney exceeded his discretion in entering into the [agreement] without consulting with the Court," and indicated its desire to leave the death penalty an option. Id. On interlocutory appeal, Moody argued that the trial court erred in not honoring the agreement for two reasons. Id. at (¶ 6). First, he argued that his guilty pleas were induced by the promised absence of the death penalty, and second, Moody argued that he detrimentally relied on the agreement. Id. The State responded that the trial court should not have been compelled to abide by the agreement as it was not a party to it. Id. at (¶ 7). In reversing the trial court, the supreme court stated that Moody was "entitled to have the plea agreement enforced for two reasons." Id. at (¶ 8). First, the supreme court reasoned that the trial court abused its discretion in refusing to accept Moody's pleas of guilt. Id. The second reason expressed by the supreme court as to why Moody's agreement should have been enforced was that he,
did indeed detrimentally rely on the agreement by substantially performing many of the terms of the agreement before the trial court refused to accept the guilty pleas and enforce the agreement. As Moody argues, his detrimental reliance and performance of the terms of the agreement mandate that the agreement be enforced.
Id. (emphasis in original).
¶ 16. In holding that the trial court abused its discretion in failing to accept Moody's pleas, the supreme court stated that the trial court did not have any sentencing options as Moody was charged with capital murder and it was "a prosecutorial function to choose whether to seek the death penalty." Id. at (¶¶ 12-13). The supreme court continued that the trial court abused its discretion, not by imposing itself in the plea bargaining process, but by seeking to usurp that function and having no reasonable basis for rejecting the pleas. Id. at (¶¶ 13-14). The supreme court then stated that, "In addition to the fact that the trial court abused its discretion, Moody correctly argues that he detrimentally relied upon the agreement by fulfilling several of its terms and is therefore entitled to have the agreement enforced." Id. at (¶ 15).
¶ 17. As in Moody, Callins detrimentally relied upon his agreement with the State in entering his guilty plea. Also, as in Moody, if Callins substantially performed his part of the agreement, he is entitled to have the agreement enforced. The supreme court's holding in Edwards v. State, 465 So.2d 1085 (1985), a case cited by the Moody court, also supports such a holding. In Edwards, the defendant agreed to resign his position as Leake County constable in exchange for the State's promise to drop a pending indictment for extortion. Id. Subsequent to Edwards's resignation, he was nonetheless indicted by the grand jury on its own initiative, and the State failed to move the trial court to enter a nolle prosequi. Id. at 1085-86. Edwards then filed a motion to quash the indictment based upon the agreement, however, it was denied. Id. at 1086. In reversing Edwards's conviction, *250 the supreme court noted that, in accordance with Mississippi Code Annotated section 99-15-53 (1972), while the State did not have the authority to enter into such an agreement without court approval, there were other considerations to consider, stating that "in addition to the [State's] promise, we also have affirmative acts on the part of the defendant in reliance upon that promise." Id. The supreme court then held, in spite of the trial court's denial of Edwards's motion to quash, that "In light of Edwards' detrimental reliance on the agreement, we are compelled to hold that the circuit court abused its discretion in not quashing the indictment and thereby forcing the state to comply with its obligation under the agreement." Id. While the prosecutor in Edwards did not have authority to enter into such an agreement without court approval, in its denial of Edwards's motion, the court exercised its discretion not to approve the agreement, albeit after-the-fact. As a result of Edwards's detrimental reliance, the supreme court, despite the trial court's decision not to honor the agreement, held that the agreement must be fulfilled.
¶ 18. The dissent next argues that Callins is not entitled to an evidentiary hearing for two reasons. First, Callins's motion for post-conviction relief did not contain supporting affidavits from those individuals whom he intended to testify. Second, Callins's allegation of detrimental reliance was contradicted by his statements during the plea hearing. It is true that Callins's motion for post-conviction relief did not contain affidavits of other individuals who would testify, but the trial judge is required to examine "all files, records, transcripts and correspondence relating to the judgment under attack." Miss.Code Ann. § 99-39-11(1) (Rev.2000). Notwithstanding the absence of supporting affidavits, the record alone is sufficient to warrant an evidentiary hearing on Callins's claims.
¶ 19. While Callins did respond affirmatively when asked if he understood that the trial court was not bound by the State's recommendation, it is of no moment. The same may well be a misstatement of the law where detrimental reliance exists and a defendant has performed his part of the plea agreement. Additionally, inherent in the question itself are two logical interpretations. First, "I understand that the judge is not a `rubber stamp' for the district attorney in sentencing." Second, "Even though I understand the judge is not a `rubber stamp' for the district attorney in sentencing, I truly believe the judge will honor his request, and this belief is a significant inducement to my plea of guilt." Each interpretation is equally logical.
¶ 20. A circuit judge has the most solemn duty to make absolutely certain, to the very best of his or her ability, that a defendant is making a truly free and voluntary plea. A much more telling colloquy of the impact the plea bargain recommendation had on Callins's, or would have on any defendant's, decision to plead guilty would be, "Mr. Callins, I do not intend to honor your plea bargain with the State. I do not care if you have agreed to forfeit your claim to $30,000 worth of property. At your sentencing hearing, I do not intend to suspend your sentence and place you on post-release supervision. Instead, I intend to sentence you to serve twenty years in the penitentiary. Mr. Callins, do you still wish to plead guilty?" It is only when we can say with confidence from the record before us that Callins's answer would have been "yes," evincing a lack of detrimental reliance upon the recommendation, should we deny an evidentiary hearing. Today, we are not so prepared.
*251 ¶ 21. THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR AN EVIDENTIARY HEARING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE OPINION, JOINED BY MYERS, P.J. IRVING, J., NOT PARTICIPATING.
CARLTON, J., Dissenting:
¶ 22. I disagree with the majority's determination that Callins is entitled to an evidentiary hearing on the issue of whether he detrimentally relied upon the plea agreement by virtue of his cooperation with the forfeiture proceedings. A trial judge is not bound to accept the sentencing recommendation of the State where he does not involve himself in the plea bargaining process. Moreover, Callins's claim was properly dismissed without a hearing as it was unsupported by the affidavits of others and directly contradicted by his sworn testimony at the plea hearing.
1. Detrimental Reliance
¶ 23. The majority cites Moody v. State, 716 So.2d 592, 595(¶ 16) (Miss.1998) for the proposition that a trial judge is bound to sentence a defendant in accordance with the State's recommendation where the defendant has detrimentally relied on the agreement by performing an additional servitude for the State. The Moody court held that it was an abuse of discretion for the trial judge to refuse the defendant's guilty plea "simply because the court does not wish to see the defendant sentenced to something less than death in exchange for valuable information about the charged offenses and other crimes." Id. at 594(¶ 11). In holding that the trial court abused its discretion, the supreme court found that the other reasons relied on by the trial judge in rejecting the agreement were unreasonable; the court stated that the trial judge was incorrect in his assertion that the prosecutor exceeded his authority in entering into the agreement without first seeking the consent of the court. Id. The court stated that the trial court impermissibly overreached its authority by usurping a prosecutorial function, specifically, to decide whether to pursue the death penalty. Id. at 595(¶ 13). The supreme court went on to find that Moody detrimentally relied on the plea agreement by providing the State with information concerning the crime he committed and a separate murder of which he possessed knowledge before the trial judge rejected his guilty plea. Id. at 595(¶ 17). The Moody court ultimately reversed the lower court's decision "[b]ecause the trial court abused its discretion in rejecting the agreement, upon which Moody had detrimentally relied. . . ." Id. at 595(¶ 19). Additionally, the supreme court deemed it necessary to point out that as a result of the sentencing scheme for capital murder "the trial judge was not vested with any sentencing options[,]" and that Moody's case "[was] not, then, a case where the defendant seeks to bind the [trial] court to a recommended sentence." Id. at 595(¶ 12).
¶ 24. Moody is inapplicable to the facts of the instant case. The trial court in Callins's case did not abuse its discretion. In sentencing Callins, the trial judge relied on the pre-sentence investigation, which revealed six prior felonies. The sentencing judge also considered the fact that Callins was dishonest in his sworn affidavit of indigency for court appointed counsel. Prior to the entry of his guilty plea, Callins was informed by the trial judge that the court was not bound to accept the recommendation made by the State.
*252 ¶ 25. I agree with the majority to the extent that Moody requires the State to honor its agreement, thus giving the defendant the benefit of his bargain. However, I am not of the opinion that a trial judge is bound to accept a sentence recommendation made by the State. An examination of prior case law should assist in bringing much needed clarity to the muddled issue presented by the case at bar.
¶ 26. First, prior case law establishes that the prosecution is required to fulfill its promises under a plea agreement. Where the district attorney reneges on its promises, the trial court may be required to ratify the State's agreement if the defendant has detrimentally relied on it. This principle has largely been applied to a prosecutor's agreement to nol pros a charge. See State v. Adams County Circuit Court, 735 So.2d 201, 204-05 (¶¶ 6-13) (Miss.1999) (trial court erred in refusing to dismiss additional charges despite prosecutor's failure to first gain court approval where defendant testified for the State pursuant to the agreement); Danley v. State, 540 So.2d 619, 621-22 (Miss.1988) (where the State unilaterally rescinded plea agreement after defendant testified for the State as agreed, the trial court was required to grant defendant's motion to quash in order to honor the prosecution's agreement to grant immunity for the charge of murder); Edwards v. State, 465 So.2d 1085, 1085 (Miss.1985) (prosecutor's refusal to move the trial court for dismissal of extortion charge required the trial court to grant defendant's motion to quash the indictment where defendant resigned from public office in reliance on agreement).
¶ 27. In the instant case, the prosecution did not renege on its promise under the plea agreement; rather, the State completely fulfilled its promise to Callins by making the agreed upon recommendation to the trial court, thereby discharging its duty under the plea agreement. Consequently, Callins received the benefit of his bargain.
¶ 28. Second, precedent holds that the trial court is not bound to accept a recommended sentence unless the trial court has participated in the plea bargaining process. Martin v. State, 635 So.2d 1352, 1354-57 (Miss.1994) ("In order to renege on a deal, you must be a part of the deal."); Moore v. State, 394 So.2d 1336, 1337 (Miss.1981). On several occasions, a trial court's involvement in the plea bargaining process has been deemed sufficient to bind the court to the terms of a plea agreement.
¶ 29. In Boyington v. State, 389 So.2d 485, 490-91 (Miss.1980), the district attorney agreed to make a recommendation of probation in exchange for the defendant's agreement to work as an undercover informant. Id. at 488. For the next six months, with the knowledge of the trial court, the defendant worked for the State developing ten cases. Id. At Boyington's plea hearing, the trial judge refused to accept the recommendation of probation, but offered to accept an alternative recommended sentence of two years, which the defendant declined. Id. Boyington then proceeded to trial where he was found guilty and sentenced to eight years. Id. On appeal, the supreme court required the trial judge to vacate the eight-year sentence and place the defendant on probation. Id. at 491. The court reasoned that "[w]hile a trial judge must control the sentencing phase of a criminal trial and has the responsibility and duty of approving or disapproving a recommendation by the prosecutor, he should never become involved, or participate, in the plea bargaining process. He must remain aloof from such negotiations." Id. at 490 (quoting Fermo v. State, 370 So.2d 930, 933 (Miss. *253 1979)). The court held that "under the peculiar facts of this case" Boyington should be placed on probation in accordance with the plea agreement reached between the defendant and the State. Id. at 491.
¶ 30. In Salter v. State, 387 So.2d 81, 82-83 (Miss.1980), the trial judge accepted the defendant's guilty pleas and the State's motion to nol pros eight existing charges, pursuant to a plea agreement, and sentenced the defendant in accordance with the State's recommendation. Id. The defendant subsequently filed a petition for writ of error corum nobis challenging the voluntariness of his guilty pleas. Id. The trial court denied Salter's motion holding his pleas voluntary, yet ordered sua sponte, that the eight nol prossed indictments be reinstated. Id. On appeal, the supreme court bound the trial judge to the terms of the agreement which he had previously accepted, stating that "[a] plea bargain was agreed upon between [the defendant], the district attorney and the trial judge that he would plead guilty to two of the indictments and the other eight would be nol prossed." Id. at 83. I note that Salter is also a case where the State reneged on its promise, leaving the defendant without the benefit of his bargain.
¶ 31. As distinguished from Boyington and Salter, the trial judge in the case at bar did not involve himself in the plea bargaining process and there is no evidence that any representation was made to Callins that it would be bound by the State's recommendation. To the contrary, Callins was clearly informed that the trial court was not bound to accept any recommendation made by the State. The judge accepting his guilty plea also informed Callins that a different judge would preside over his sentencing and the record reflects that the defendant agreed to be sentenced by a different judge.
¶ 32. I find that Callins's case does not fall within the ambit of prior "detrimental reliance" cases which bind a trial court to the terms of a plea agreement for three reasons. First, the trial judge did not abuse his discretion in rejecting the State's recommendation. "The imposition of sentence is within the sound discretion of the trial court, and this Court will not review the sentence so imposed, if it is within the prescribed limits of the statute." Yazzie v. State, 366 So.2d 240, 244 (Miss.1979) (citing Ainsworth v. State, 304 So.2d 656 (Miss.1975)). Second, the prosecutor did not renege on its promise under the agreement. Third, the trial judge did not impermissibly participate in the plea bargaining process or represent that he would be bound by the State's recommendation.
¶ 33. Callins's case is closely analogous to Martin v. State, 635 So.2d 1352, 1354-57 (Miss.1994). In Martin, the defendant agreed to plead guilty and to testify against his co-defendants in exchange for the State's recommendation that he receive a five year sentence. Id. At his plea hearing, the State made the agreed upon recommendation and Martin was informed by the trial judge that the court was not bound to accept the State's recommendation. Id. The trial court accepted Martin's guilty plea but refused to follow the State's recommendation. Id. On appeal, Martin argued that he should be re-sentenced in accordance with the State's recommendation because his agreement was "more than a mere plea-bargain." Id. Martin asserted that, under the holding of Boyington, the trial judge was bound to sentence him in accordance with State's recommendation because he had performed an additional duty to the State by testifying against his co-defendants. Id. The supreme court refused to bind the trial court to the recommended sentence finding that trial court did not participate in *254 plea bargain discussions and never bound itself to accept the State's sentence recommendation. Id. The court in Martin also noted that the prosecutor fulfilled his promise by making the recommendation to the trial court. Id. ("[T]he district attorney's recommendation was just that  a recommendation only  and that the court was in no wise bound by it." (citing Moore, 394 So.2d at 1337)).
¶ 34. Just as in Martin, Callins agreed to plead guilty and perform an additional service for the State in exchange for the prosecution's recommendation of a more lenient sentence. The State fulfilled its promise by making the recommendation, unfortunately for Callins, the trial judge, acting well within its discretion, refused to follow it. Callins was informed that the trial court was not bound by the State's recommendation. He had the opportunity during his plea hearing to express that he believed the court would be bound by the State's recommendation, yet he affirmatively stated that he understood the court was not so bound.
¶ 35. In light of the facts of the case sub judice and law as currently situated, I would prefer to follow the holding in Martin. I find that holding in accordance with Martin is consistent with the Mississippi Uniform Rules of Circuit and County Court. Nothing in the rules binds a trial court to sentence a defendant to the term recommended by the State. Pursuant to 8.04(B)(2), in reaching a plea bargain agreement, the prosecuting attorney may "[m]ove for a dismissal of other charges" and/or "[m]ake a recommendation to the trial court for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." (emphasis added). After an agreement has been reached between the defendant and the prosecution "it may be made known to the court along with the reasons for the recommendation, prior to the acceptance of the plea." URCCC 8.04(B)(2). In addition, Rule 8.04(B)(4) provides that "[the] trial judge shall not participate in any plea discussion." Id.
¶ 36. In conformity with the rules, the prosecutor was well within his authority to make a non-binding sentence recommendation which included his reasons for making it, namely, that Callins cooperated in the forfeiture action. To this end, Callins understandably possessed a hope of leniency, a hope that his cooperation would be considered favorably in his behalf as mitigating evidence. However, in sentencing Callins, the trial judge relied on the presentence investigation, which revealed six prior felonies. The sentencing judge also considered the fact that Callins was dishonest in his sworn affidavit of indigency for court appointed counsel. I find the trial judge's decision to reject the recommended sentence was well within his discretion and I reject the majority's determination that the trial court may be bound to sentence Callins in accordance with the State's recommendation.
2. Evidentiary Hearing
¶ 37. I disagree with the majority's determination that Callins is entitled to an evidentiary hearing. The trial judge, in his order dismissing Callins's motion, provided two proper grounds for dismissal without an evidentiary hearing. First, the judge found that the allegation made by Callins in his motion was completely contradicted by the transcript of the guilty plea hearing. Second, the judge stated that Callins's motion did not meet the pleading requirements of Mississippi Code Annotated section 99-39-9 (Rev.2000) and was also dismissed for this reason. I am of the opinion that, under familiar, well-established case law of our State's reviewing courts, Callins's motion may have been *255 properly dismissed without an evidentiary hearing on either of the two grounds given by the trial judge. I find that the trial judge was eminently correct in summarily dismissing Callins's motion for post-conviction relief.
¶ 38. A motion for post-conviction relief must meet the pleading requirements set forth in Mississippi Code Annotated section 99-39-9(1)(e), which mandates, inter alia, that the motion contain "a specific statement of the facts which are not within the prisoner's personal knowledge" and further, that affidavits of other persons who will testify as to these facts be attached to the motion. Miss.Code Ann. § 99-39-9(1)(e) (Supp.2006). The trial judge, upon receipt of a motion for post-conviction relief, is required to promptly make an initial examination of the original motion, together with all documents associated with the judgment under attack. Miss.Code Ann. § 99-39-11(1) (Rev.2000). After conducting this examination, the trial judge may dismiss the motion without an evidentiary hearing "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief[.]" Miss.Code Ann. § 99-39-11(2) (Rev.2000). "A trial court has considerable discretion in determining whether to grant an evidentiary hearing." Meeks v. State, 781 So.2d 109, 114(¶ 14) (Miss.2001); White v. State, 818 So.2d 369, 370(¶ 4) (Miss.Ct.App.2002).
¶ 39. This Court and our supreme court have repeatedly held that a motion for post-conviction relief is properly dismissed without an evidentiary hearing where the defendant's allegations are directly contradicted by the transcript of the guilty plea hearing. See, e.g., Taylor v. State, 682 So.2d 359, 364 (Miss.1996) (holding that defendants claim of involuntary plea was properly dismissed without an evidentiary hearing where his assertions that he did not understand the charges against him and the "trial process" were refuted by his sworn testimony at the plea hearing); Roland v. State, 666 So.2d 747, 751 (Miss. 1995) (holding summary dismissal proper where plea hearing transcript showed that defendant was advised of the rights of which he later claimed to be unaware); Harveston v. State, 597 So.2d 641, 643 (Miss.1992) (concluding that defendant's claim of involuntary plea was manifestly without merit where plea transcript contradicted his claims); Dawkins v. State, 919 So.2d 92, 95(¶ 5) (Miss.Ct.App.2005) ("When claims are contradicted by the record of the plea acceptance, they may be labeled as a `sham' by the court, and be disregarded." (citations omitted)).
¶ 40. It is well-settled that a defendant's claims unsupported by the affidavits of others are properly dismissed where they are directly contradicted by the record. See, e.g., Gable v. State, 748 So.2d 703, 706(¶ 11) (Miss.1999) ("The transcript of Gable's guilty plea hearing belies his current contentions. Furthermore, Gable produced no affidavits other than his own contradicting his earlier sworn statements."); Young v. State, 731 So.2d 1120, 1123(¶ 12) (Miss.1999) ("[W]hen the only support offered by a convict is his own affidavit, and his affidavit is contradicted by his own sworn statement, an evidentiary hearing is not required." (citation omitted)); Marshall v. State, 680 So.2d 794, 795 (Miss.1996) ("[Defendant's] petition is only supported by his affidavit. There is no affidavit from his attorney or anyone else involved with his plea. [He] did not make the requisite showing for an evidentiary hearing."); Wilson v. State, 760 So.2d 862, 864 (¶¶ 5 & 6) (Miss.Ct.App.2000) (When the prima facie showing that is a necessary prerequisite to an evidentiary hearing consists solely of the assertions of the movant himself, the trial court may disregard such assertions when they are substantially contradicted by the court record *256 of the proceedings that led up to the entry of the judgment of guilt." (citing Fielder v. State, 749 So.2d 1248, (¶¶ 12 & 15) (Miss.Ct.App.1999))).
¶ 41. Our reviewing courts have also held on numerous occasions that a motion unsupported by the affidavits of others fails to meet the pleading requirements of Mississippi Code Annotated section 99-39-9(1)(e), and is properly dismissed without an evidentiary hearing solely for this reason. See, e.g., Robertson v. State, 669 So.2d 11, 13-14 (Miss.1996) (holding that motion was deficient due to defendant's failure to satisfy the pleading requirements of Miss.Code Ann. § 99-39-9, thus no evidentiary hearing was required); Brooks v. State, 573 So.2d 1350, 1354 (Miss.1990) (stating that because defendant's allegations in motion for post-conviction relief were not supported by affidavits other than his own, his claim of ineffective assistance was "without merit for this reason if for no other."); Winston v. State, 893 So.2d 274, 276(¶ 6) (Miss.Ct.App.2005) (summary dismissal proper where defendant failed to provide the statutorily required affidavits and failed to demonstrate good cause to excuse such failure).
¶ 42. The majority's finding of detrimental reliance is undermined by Callins's own sworn testimony in the record. The transcript of the plea colloquy reflects that Callins stated under oath that he understood that the trial court was not bound to accept the State's recommendation and could impose the maximum sentence even though the State was recommending a lesser sentence. He indicated that he understood the maximum penalty, a term of twenty-four years and a fine of $500,000. The majority relies on the validity of these statements to determine that Callins's claim of involuntary plea is without merit, yet refuses to acknowledge that they equally discredit the idea that Callins detrimentally relied on the plea agreement. In this regard, I find the reasoning of the majority to be self-contradicting and inherently inconsistent.
¶ 43. In conclusion, the contentions made by Callins are directly contradicted by his own sworn statements in the record. Additionally, Callins provided no affidavits other than his own to support his claims, nor did he attempt to make a showing of good cause to excuse their absence as required by Mississippi Code Annotated section 99-39-9(1)(e). Accordingly, I find that the trial judge was correct in dismissing Callins's motion without an evidentiary hearing.
¶ 44. The majority's holding undermines the purpose and validity of the guilty plea colloquy. Where the transcript of the plea colloquy reflects that a defendant was fully informed regarding a certain consequence of his guilty plea, he should not later be heard to claim that he was unaware of the consequence. Accordingly, I respectfully dissent.
MYERS, P.J., joins this Opinion.